In re Joan R. TUCKER, Debtor.

Phyllis SANDERS, Plaintiff,

v.

Joan R. TUCKER, Defendant.

Bankruptcy No. 80–30170.
Adversary No. 80–7017.

United States Bankruptcy Court,
S. D. New York.

July 2, 1980.

Stanley J. Sanders and Irving Mandell, P. C., Roslyn, N. Y., for plaintiff; Errol Blank, Roslyn, N. Y., of counsel.

Warren Greher, Newburgh, N. Y., for defendant-debtor; Seymour Feinman, Newburgh, N. Y., of counsel.

JEREMIAH E. BERK, Bankruptcy Judge.

Plaintiff, as assignee of a second mortgage and two judgments (judicial liens) of record, filed a complaint on April 30, 1980 commencing this adversary proceeding seeking relief from the automatic stay of Bankruptcy Code § 362(a), 11 U.S.C. § 362(a), in order to sell defendant-debtor's residence pursuant to a state court judgment of foreclosure and sale. A preliminary hearing pursuant to Bankruptcy Code § 362(e) was held on May 23, 1980 and the automatic stay was continued pending a final hearing which commenced on June 2, 1980 and was continued to and concluded on June 11, 1980. Thereafter, counsel for both parties submitted briefs in support of their

positions. Upon the pertinent facts as established by the pleadings, stipulations and the evidence at the hearings, the Court renders the following decision.

## STATEMENT OF CASE AND FINDINGS OF FACT

1. On April 21, 1980, one day before defendant's residence was to be sold by foreclosure of the second mortgage, defendant filed a voluntary individual petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Chapter 11. As a result thereof, the automatic stay of Bankruptcy Code § 362(a) became operative and the foreclosure sale was stayed. Thereafter, plaintiff, as assignee of the second mortgage and two judicial liens, sought relief from the stay.

2. At the time of commencement of her Chapter 11 case, defendant was not engaged in business, was unemployed and had no apparent source of income. The first mortgagee and plaintiff are the only secured creditors. There are no unsecured creditors. Defendant's principal asset is her residence, the subject of this proceeding, which she presently occupies with her husband. All other assets have been claimed as fully exempt under the new federal bankruptcy exemption system allowed by Bankruptcy Code § 522(d). Defendant has not filed a plan of arrangement and her attorney has indicated that unless the residence can be sold there is no hope of funding a plan.

3. Defendant's residential property consists of a house situated on three-quarter acres at 23 Peterbush Drive, Monroe, Orange County, New York. The house is a seven year old, nine-room modern colonial with an attached two-car garage, circular drive and a large in-ground swimming pool with deck and shed. The house is in relatively good condition, but in need of some minor repair. There is no indication that the property is appreciating in value. Defendant has allowed the fire and hazard insurance to lapse for nonpayment of premiums and the property is currently uninsured. The property has been on the market for approximately six months during which time defendant has been seeking a buyer in the expectation of obtaining a price sufficiently high to satisfy all liens, broker's commissions and closing costs, and possibly to generate a surplus for herself. It is currently listed for sale at $97,000 with a broker's commission of 7%.

4. For the purposes of this proceeding the parties have stipulated that the following charges constitute valid liens and encumbrances against defendant's property:

   a. First mortgage, held by First Federal Savings and Loan Association of Middletown, New York, in the amount of $44,799 as of May 23, 1980, with principal, interest and other charges accruing at the rate of $587 per month.

   b. Second mortgage (reduced to judgment of foreclosure and sale on February 5, 1979) and two judgment (judicial) liens, all held by plaintiff as assignee, in the aggregate amount of $34,743 as of April 21, 1980, with interest accruing at the legal rate of $160.29 per month.

   c. Unpaid real estate taxes to the Town of Monroe in the amount of $900 as of January 1, 1980. (There has been no stipulation or proof as to the rate of interest and/or penalties accruing thereon.)

5. No testimony was offered to establish the value of this property at the time the liens were created or at the time they were acquired by plaintiff. The parties presented real estate brokers familiar with the subject property who testified as to their opinion of its present fair market value. Plaintiff's witness has been a real estate broker for 14 years and has conducted approximately 250 appraisals. Based upon inspection of the property, it was his opinion that the current fair market value is approximately $85,000. Defendant's witness has been a real estate salesman for six years, a real estate broker for one year and has made no prior appraisals. Based upon inspection of the property and a review of comparable sales in the area, it was his opinion that the current fair market value is approximately $97,000, although he indi-

cated that the recent increase in mortgage rates in the area has reduced the strength of the market subsequent to the comparable sales upon which his valuation in part was based. It should also be noted that defendant's witness is the real estate broker with whom this property currently is listed for sale.

6. After reviewing the testimony of the witnesses for both parties and the arguments of counsel, this Court is of the opinion that the fair market value is the appropriate standard of valuation to be used,[1] and that the reasonable current fair market value of this residential property is $88,000.

7. Upon the testimony adduced and the stipulation between the parties, it appears that the aggregate liens and charges against the property as of this date total at least $81,500 and are increasing at the rate of approximately $25 per day. Accordingly, it follows that the defendant has an equity in the subject property of approximately $6,500. This sum constitutes the approximate "equity cushion" as of this date, and is approximately 7.4% of the estimated fair market value of the property.

## DISCUSSION

Plaintiff's request for relief from the automatic stay is governed by Bankruptcy Code § 362(d), 11 U.S.C. § 362(d), which states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

Plaintiff alleges two grounds for relief from the automatic stay, to wit, (1) lack of adequate protection of her interest in the property, and, alternatively, (2) that the defendant-debtor does not have an equity in the property and the property is not necessary to an effective reorganization.

■ It has been found that the defendant has an equity in the subject property of approximately $6,500 and, accordingly, relief from the automatic stay under § 362(d)(2) may not be granted. It is to the question of "adequate protection" under § 362(d)(1) that plaintiff and defendant have directed their attention and which this Court now considers.

Although the term is not defined, Bankruptcy Code § 361 sets forth three nonexclusive examples of what may constitute "adequate protection" if secured property is to be used by a debtor, to wit, (1) periodic cash payments equivalent to decrease in value, (2) an additional or replacement lien on other property, or (3) other relief that provides the indubitable equivalent. None of these has been offered. Instead, defendant contends that the equity cushion itself provides protection for plaintiff's interest in the property.

■ An adequate "cushion" can itself constitute adequate protection with nothing more. 2 *Collier on Bankruptcy*, § 361.02[3] at p. 361–9 (15th ed. 1979). An "equity cushion" in and of itself may constitute adequate protection within the meaning of § 362(d)(1). *In re Rogers Development Corp., supra; In re Pitts*, 2 B.R. 476, 5 BCD 1129 (Bkrtcy.C.D.Cal.1979).

The valuation process through which an equity cushion is determined, at best, is inexact. In establishing an amount for the cushion, the Court must consider estimates and approximations founded upon opinions and assumptions. As stated in *In re Pitts*, id. at 478, 5 BCD at 1129:

> We deal here in likelihoods and probabilities. We do not have techniques or paraphernalia with which to make evalu-

---

1. See, *In re Rogers Development Corp.*, 2 B.R. 679, 684, 5 BCD 1392, 1395, (Bkrtcy.E.D.Va. 1980); *In re American Kitchen Foods, Inc.*, 2 BCD 715, 9 C.B.C. 537 (D.Me.1976).

ations or predictions with the finite exactitude known to the laboratory. We note and pass without discussion the *many* variables which may ultimately negate and destroy the validity and fairness of the conclusions so carefully and thoughtfully synthesized by court and counsel: for example, termite costs, structural defects, title problems unforeseen, attorneys' fees, upswing or depression of land values, fluctuation of interest rates affecting the availability to purchasers of mortgage funds, and matters of similar import.

The adequacy of the protection afforded by an equity cushion, stated either as a dollar amount or as a percentage of the estimated fair market value of the property, must ultimately be determined upon equitable considerations arising from the particular facts of each proceeding. For instance, the amount of an equity cushion which may be adequate protection for a third or fourth mortgagee in one case, may be insufficient to constitute adequate protection for a first mortgagee in another case. The bargain of the parties at the time of lien creation, including the bargained-for collateral-to-debt ratio and the reasonable expectations of the lienholder for the future prospects of lien enforcement, are factors which should not be overlooked when evaluating the adequacy of protection. The Legislative History to § 361 recites: "This section and the concept of adequate protection are based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain." S.Rep.No. 95–989, 95th Cong., 2nd Sess. 53 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5839.

There has been no evidence offered concerning the facts surrounding plaintiff's acquisition of these liens. All that appears is that plaintiff acquired a consensual lien (second mortgage) and two assumedly non-consensual liens (judgments) sometime prior to the commencement of this proceeding. Further, there is no proof as to the priorities of the liens so acquired. Plaintiff appears to be an assignee of both consensual and non-consensual liens. The question as to the degree of protection to be afforded a consensual lien creditor, as contrasted with a non-consensual lien creditor, or the assignee of either, in light of their respective bargains (if any), has not been addressed by the parties; and there is insufficient proof before this Court for a consideration of the question. Accordingly, for the purposes of this proceeding, plaintiff is viewed herein from the combined perspective of a second mortgagee and judicial lien creditor. However, even if defendant had established that plaintiff's lien position should be bifurcated and the judicial liens afforded some lesser degree of protection than the second mortgage lien, upon all of the proof before this Court, it would appear that such a bifurcation would not, in and of itself, be determinative of the outcome of this proceeding.

*In re Rogers Development Corp., supra,* found an equity cushion of at least $130,000 (17.4% of the approximate fair market value of commercial real property) to be adequate protection for a first mortgagee. *In re Pitts, supra,* found an equity cushion of $19,125 (15.3% of the approximate fair market value of residential property) to be "minimal" protection to a second mortgagee, but nevertheless sufficient to continue the automatic stay pending periodic reexamination of the cushion.

The degree of protection afforded by an equity cushion must be determined upon supposition as to the future, with a view from the known probing the unknown. By virtue of § 362(g)(2), it is the defendant-debtor who has the burden of divining the future and proving the proffered protection adequate.

■ The following factors, when taken together, persuade this Court that the equities here are in plaintiff's favor and that the automatic stay should be terminated for cause, including the lack of adequate protection.

1. The estimated cushion of $6,500 represents approximately 7.4% of the estimated fair market value of the property. This amount is inadequate. No other

protection to plaintiff has been offered or is available.

2. The cushion is decreasing at the rate of approximately $25 per day.

3. There is no indication that the property is appreciating in value or that defendant is making necessary repairs.

4. Defendant has allowed the fire and hazard insurance to lapse and the property is uninsured.

5. The only apparent purpose of this Chapter 11 case is to forestall the pending foreclosure sale while defendant continues to search for an acceptable purchaser.

6. The property has been on the market and listed with brokers for approximately six months.

7. There is no realistic prospect for a successful rehabilitation or reorganization under Chapter 11. Defendant has not filed a plan and is unable to do so unless the property can be sold. Even if defendant were immediately to sell the property for $90,000, it is likely that said sum would be insufficient to cover all liens and other charges against the property, including a 7% broker's commission and anticipated costs of closing.

8. Without the ability to effectuate a plan, continuation of this case in Chapter 11 is doubtful. Should the automatic stay be continued and the equity cushion prove to be inadequate upon a not-unlikely-conversion to Chapter 7, plaintiff's unsecured "super-priority" envisioned by Bankruptcy Code § 507(b)—where adequate protection later proves inadequate—would be of little value after liquidation of this property by a superseding trustee, there being no other property to comprise the Chapter 7 estate.

9. Under current market conditions the possibility of a reasonably prompt sale for more than $90,000 is remote and too speculative for keeping plaintiff in jeopardy while the cushion decreases.

## CONCLUSIONS OF LAW

1. The plaintiff is entitled to relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1) for cause, including lack of adequate protection of her interest in the subject property.

2. The automatic stay of Bankruptcy Code § 362(a) is hereby terminated as to plaintiff's enforcement of the state court judgment of foreclosure and sale and other judicial liens against the subject property.

IT IS SO ORDERED.