In re Albert M. and Teresa N.
LeMAY, Debtors.

SPRINGFIELD INSTITUTION FOR
SAVINGS, Plaintiff,

v.

Albert M. and Teresa N. LeMAY,
Defendants.

Bankruptcy No. 4–81–00268–G.
Adv. No. 4–81–0339.

United States Bankruptcy Court,
D. Massachusetts.

March 29, 1982.

Gary P. Shannon, Doherty, Wallace, Pillsbury & Murphy, Springfield, Mass., for plaintiff.

Linwood A. Hodgdon, Holbrook, Mass., for defendants.

## MEMORANDUM AND ORDER ON COMPLAINT FOR RELIEF FROM STAY

PAUL W. GLENNON, Bankruptcy Judge.

On November 30, 1981, a hearing was held on the complaint of the Springfield Institution for Savings ("Bank") seeking relief from the automatic stay, pursuant to 11 U.S.C. § 362, to allow it to proceed with foreclosure proceedings with respect to residential property owned by the debtors. Both parties were represented by counsel at the hearing. The Bank presented a written appraisal of the subject property and oral argument was heard. The Court requested memoranda from counsel and took the matter under advisement.

The Court has reviewed the pleadings, the appraisal report filed by the Bank, and the oral and written arguments of counsel. This memorandum represents the Court's findings of fact and conclusions of law.

On March 19, 1976, the defendants Albert M. LeMay and Teresa N. LeMay ("debtors") executed a note in favor of the Bank in the original amount of $21,900. This note was secured by a mortgage deed from the defendants to the plaintiff of the real property at 137 El Paso Street in Springfield, the debtor's residence. The defendants defaulted on the mortgage payments in August 1980 and have been in default at all times subsequent thereto. The Bank commenced mortgage foreclosure proceedings in the Land Court of the Commonwealth of Massachusetts in December of 1980. On April 8, 1981, the defendants filed a joint Chapter 13 petition which enjoined the foreclosure sale scheduled for April 10, 1981.

The debtors' Chapter 13 plan was confirmed on July 31, 1981. By its terms the debtors were to pay the Bank $150 per month for 24 months towards the $1600 arrearage on their mortgage, together with the current monthly mortgage payment of $273.16. No payments have, in fact, been made towards the arrearage and no current monthly payments have been made since the May 1981 and June 1981 payments. At the November 30, 1981 hearing on the

Bank's complaint, the debtors' counsel represented that the debtors intended to convert their case to a case under Chapter 7. They did so on December 3, 1981.

The Bank's mortgage is the only encumbrance against the subject property. At the time of the November 30, 1981 hearing, the Bank was owed $26,403. This represents principal in the amount of $21,084.29, accrued interest of $2,291.39, $1400 escrow, $72.24 in late charges, $400 for the appraisal, and $1,154.11 in attorney's fees and costs of foreclosure incurred as of the hearing date. The interest rate under the terms of the mortgage note is 8¾% per annum on the unpaid balance. Interest is therefore accruing on the unpaid principal at the rate of $153.74 per month.

The Bank presented an appraisal of the subject property by Bert Dolan, Jr., president of Dolan & Rossi Appraisal Company in Springfield. In the report Mr. Dolan states that it is his opinion that the fair market value of the subject property as of November 18, 1981, was $27,000. Debtors' counsel, in his memorandum, states that the Bank's appraisal is a "low estimate of value in that it does not take into account the recent rapid rise in the value of residence property in this area". The only "evidence" the Court has from the debtors as to the property's fair market value is their statement in their Plan that the "present market value" is $35,000 and that this market value "was arrived at by personal estimation". The debtors are qualified to provide an opinion as to the market value of their property and the Court will treat the $35,000 figure as the debtors' evidence on market value.

The Court has carefully reviewed the 21 page appraisal report prepared by Mr. Dolan which describes the data on which his conclusion as to value is, in part, predicated. In particular the Court examined the six comparable sales described in the report. The Court notes that Mr. Dolan did not have an opportunity to examine the interior of the subject property. It is the Court's conclusion based on its examination of the Bank's appraisal, and the Court's own experience with mortgagees' appraisals, that his appraisal is conservative. However, the debtors have provided no substantive information that would suggest that the Bank's appraisal substantially under-values their property. Therefore, the Court finds that the fair market value of the subject property is $29,000.

The Court found above that the encumbrances on the property at the date of the hearing amounted to $26,403. Since that date four months interest has accrued, increasing the amount owed to the Bank to $27,017.96. This means that the equity for the debtors is approximately $2,000, an "equity cushion" [defined as the ratio of equity ($2,000) to fair market value ($29,000)] for the Bank of less than seven percent.

Relief from the automatic stay is governed by 11 U.S.C. § 362(d):

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> > (A) the debtor does not have an equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization.

Because this is a Chapter 7 proceeding subsection (d)(1) is the controlling standard for determining whether the stay should be terminated. The only form of "adequate protection" the debtors have to offer is the equity cushion.

The question is whether this "equity cushion" is substantial enough under the circumstances to warrant continuation of the automatic stay for some period of time, to be determined by the Court, during which the debtors may seek to effect a private sale and realize on the equity they believe exists. In a case recently decided by this Court the equity cushion concept of adequate protection was summarized. See

*In re Grundstrom*, 15 B.R. 832 (Bkrtcy.D. Mass.1981). Applying the analysis set out in that case to the facts of the instant case, I must quickly conclude that the automatic stay should be terminated for cause, including lack of adequate protection. A seven percent equity cushion will rarely provide sufficient protection because a key component of the ratio, the fair market value figure, is only the Court's best estimate and, as an estimate, requires a margin for error. Additionally, this cushion is steadily decreasing through the accrual of interest charges; there is no evidence that this property is appreciating in value at a corresponding rate. There is no evidence that the debtors are actively attempting to sell the property and consequently no basis for concluding that a sale might be effected promptly. Finally, as a practical matter, even if the debtors were successful at effecting a private sale, the greater portion of the amount realized in excess of the amount owed the Bank would be consumed by a broker's commission, closing costs, and miscellaneous charges against the property that have accrued in the interim.

As the Court in the case of *In re Tucker*, 6 B.C.D. 699, 5 B.R. 180 (Bkrtcy. S.D.N.Y. 1980) concluded on facts remarkably parallel to those found here, the probability of a reasonably prompt sale, for more than the encumbrances on the property and the costs of effecting a sale, being remote and speculative, the plaintiff should not be kept in jeopardy while the equity cushion decreases. The plaintiff is entitled to relief from the automatic stay pursuant to 11 U.S.C. 362(d)(1) for cause, including lack of adequate protection of its interest in the subject property.