In re David William **CARSON**, Marjorie Ellen Carson, Debtors.

**WYANDOTTE BANK**, Plaintiff,

v.

**David William CARSON**, Marjorie Ellen Carson, Defendants.

Bankruptcy No. 82–20871.
Adv. No. 83–0021.

United States Bankruptcy Court, D. Kansas.

June 2, 1983.

David W. Boal, Kansas City, Kan., for debtors/defendants.

Carol Park, Asst. U.S. Trustee, Wichita, Kan.

F. Stannard Lentz, Mission, Kan., for Creditors' Committee.

William J. Paprota, Kansas City, Kan., for plaintiff, Wyandotte Bank.

Philip C. Lorton, Kansas City, Kan., for West Side Racquet Club.

Chris W. Henry, Kansas City, Kan., trustee for West Side Racquet Club.

David Skidgel, Kansas City, Kan., for Commercial Natl. Bank.

Howard Lyden, Overland Park, Kan., for Various Banks.

J.F. Steineger, Kansas City, Kan., for T. Phillips.

R. Michael Latimer, Ottawa, Kan., for N.E. Ks. P.C.A.

Sally Herrington Holmgren, Wichita, Kan., Thomas M. Mullinix, III, Kansas City, Kan., for Federal Land Bank.

Clarita DePaolis, Lansing, Kan., Realtor.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on February 25, 1983, and April 13, 1983, upon a Complaint for Relief from Automatic Stay. Plaintiff, Wyandotte Bank, appeared by counsel, William J. Paprota. Debtors/defendants, David William Carson and Marjorie Ellen Carson, appeared in person and by counsel, David W. Boal. The Creditors' Committee appeared by counsel, F. Stannard Lentz. Federal Land Bank of Wichita appeared by counsel, Thomas M. Mullinix. Howard Lyden appeared as counsel for Valley View State Bank, Metropolitan Bank, Metro North State Bank, Broadway National Bank and First National Bank of Gladstone. Also appearing was Chris Henry, Trustee in Westside Racquet Club, Bankruptcy Case No. 82–20632.

## FINDINGS OF FACT

Based on the exhibits, testimony, pleadings, file and taking judicial notice of the file in Westside Racquet Club, the Court finds as follows:

1. That this Court has jurisdiction of the parties and subject matter pursuant to Rule 42 of the United States District Court, District of Kansas; and that venue is proper.

2. That David and Marjorie Carson filed a Chapter 11 petition in this Court on September 10, 1982.

3. That the debtors are the record title owners of real estate located in Wyandotte County, Kansas, and described as follows:

> "Beginning at the point where the Wyandotte Delaware Reserve Line intersects with the South line of Section 4, Township 11, Range 24, Wyandotte County, Kansas; Thence North along the Wyandotte Delaware Reserve Line 430.0 feet; Thence East 240.0 feet; Thence South 430.0 feet; Thence West 240.0 feet to the point of beginning."

The tract contains a gross area of 103,198 square feet or 2.369 acres more or less. It is subject to highway right-of-way easements, leaving a net useable area of 89,708 square feet or 2.059 acres more or less. Westside Racquet Club, Inc. (Westside) is located on this tract.

4. That on August 10, 1977, the debtors and Westside executed a $270,000.00 note to the Wyandotte Bank secured by the real estate described in paragraph 3 above, as well as all fixtures, chattels, inventory, consumer goods, furniture, equipment, accounts, accounts receivable and contract rights then owned or thereafter acquired. On March 2, 1978, the debtors and Westside executed a $90,000.00 note to Wyandotte Bank, secured by the same collateral as the 1977 note. Wyandotte Bank duly perfected its interest in the real estate and personalty collateral of the notes.

5. That the subject real estate is subject to three other mortgages, all of which are inferior liens to that of Wyandotte Bank: Valley View State Bank (proof of claim $425,993.00); Northeast Kansas Production Credit Association (proof of claim $631,186.90) which is also secured by equipment, livestock, machinery and vehicles; and Metro North State Bank (proof of claim $605,000.00), which is also secured by other real estate.

6. That the debtors leased the subject real estate and building to Westside. The lease has been in default for over a year, and Westside has ceased doing business. Thus, under the terms of their lease, the land and building have reverted to the debtors.

7. That Westside and the debtors are in default on the notes to Wyandotte Bank, and have been since March 9, 1982. The principal balances due on the notes are $269,875.73 and $87,601.94. Interest accrues on these notes at the rate of $137.11 per day. That calculates to $25,365.35 in prepetition interest and $43,884.98 in postpetition interest, for a total balance due of $426,728.00, including postpetition interest.

8. That Westside and the debtors have failed to pay insurance premiums, and real estate taxes for 1980 through 1982. These obligations total $37,611.74 plus accrued interest on the tax liabilities. That Wyandotte Bank has had to pay utilities and periodically inspect for vandalism.

9. That John L. Keuchel, Wyandotte Bank's expert witness[1] testified that the land was worth $2.00 per square foot as opposed to his 1981 appraisal of same at $1.50 per square foot, because of inflation. He did not give as much weight to other sales as the debtors did in their valuation of the land, because he found that the other sales were not comparable. For example, the neighboring Pizza Hut tract sold for $3.85 per square foot but it was more marketable, smaller, with a better position on the access road. The neighboring Perkins tract sold for $3.50 per square foot but it also had a better position on the access road. The evidence was that the debtors' tract was farther back from the access road, and inconveniently situated in that it inter-

---

1. The Bank's appraiser has been appraising since 1959.

sected busy State Avenue without a stoplight. The Court finds that Wyandotte Bank's evidence is more acceptable. Thus, the value of the land at $2.00 per square foot, is $179,416.00.

10. That Wyandotte Bank's expert witness' valuation of the building is also more plausible. Using a cost approach (no figures were available for income or comparable sales approach) and using recognized appraisal guides, he found the building was worth $242,264.00. In 1977, he had appraised the building at $425,000.00, relying solely on blueprints of the unfinished building. In 1981 he had appraised it at $316,-000.00. The substantial difference in his 1981 and 1983 appraisals was due to the severe physical depreciation of the building. The sauna and exercise equipment were inoperable. The jacuzzi and showers were deteriorated. The carpeting was torn. The insulation and ceiling fixtures were falling. The foundation was cracked, the walls were leaking and the tiles were water damaged. The outside steps were broken and vandalized with paint.[2] Thus, the total value of the building and land, according to the Bank's expert witness is $421,680.00.

11. That since September, 1982, the Bank has actively sought purchase offers, while the debtors have not. Only one written offer has been received and it was unacceptable.

12. That the debtors' proposed plan of reorganization calls for the reopening of the club, which they think will improve its marketability as a going concern. The plan also calls for development of several tracts of real estate and continued operation of their cattle ranch.

### CONCLUSIONS OF LAW

#### I.

Complaints for relief from stay are governed by 11 U.S.C. § 362 which states in pertinent part:

"§ 362. Automatic Stay.

\* \* \* \* \* \*

*(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—*

*(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or*

*(2) with respect to a stay of an act against property, if—*

*(A) the debtor does not have an equity in such property; and*

*(B) such property is not necessary to an effective reorganization.*

\* \* \* \* \* \*

*(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—*

*(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property: and*

*(2) the party opposing such relief has the burden of proof on all other issues."*

The majority view is that § 362 provides alternative grounds for relief such that a creditor will prevail upon a showing of no equity and not necessary to an effective reorganization, or for cause including the showing of lack of adequate protection. *In re Paradise Boat Leasing Co.,* 5 B.R. 822, 824, 2 C.B.C.2d 1153 (U.S.D.C.V.I.1980); *In re Sulzer,* 2 B.R. 630, 635, 5 B.C.D. 1314, 1 C.B.C.2d 451, CCH ¶ 67340 (Bkrtcy.S.D.N.Y. 1980); *First Conn. Small Business Inv. Co. v. Ruark,* 7 B.R. 46, 48, 7 B.C.D. 59 (Bkrtcy. D.Conn.1980). Also see H.R. No. 95–595, 95th Cong., 1st Sess. (1977) 315; S.R. No. 95–989, 95th Cong., 2d Sess. (1978) 83, U.S. Code Cong. & Admin.News, 1978, pp. 5787, 6272. But see *In re Alyucan Interstate Corp.,* 12 B.R. 803, 811, 7 B.C.D. 1123, 4 C.B.C.2d 1066 (Bkrtcy.D.Utah 1981) at foot-

---

**2.** *Although a Bank officer testified that the cost of repairs would be about $25,000.00, the Court gives little weight to the testimony because no foundation was laid for his testifying to repair* *costs. Furthermore, even if this estimate were accurate, it does not follow that the building has only depreciated by $25,000.00.*

note 17, where J. Mabey questions whether § 362(d)(2) is the exclusive standard for relief from stay of "an act against property".

This Court finds that §§ 362(d)(1) and 362(d)(2) are separated by the disjunctive "or", which is defined in 11 U.S.C. § 102(5) as not exclusive. Thus relief from stay may be granted under the alternative criteria of §§ 362(d)(1) or 362(d)(2).

## II. § 362(d)(2)

■ For a creditor to prevail on this ground, for relief, the debtor must fail its burden of proving that the property is necessary for an effective reorganization and the creditor must fail its burden of proving no equity. See § 362(g). With respect to the first prong of this test, this Court finds that the debtors have not shown that the property is necessary for an effective reorganization. Although the debtors have filed a plan of reorganization and although the Court at this juncture has no reason to doubt the plan's viability, the Court doubts that Westside Racquet Club is particularly essential to the debtors' overall plan. See 2 Collier on Bankruptcy ¶ 362.07[2] (15th ed.) where Collier states that it should not be assumed that every asset is essential to an effective reorganization.

The debtors plan to reopen the club to expedite its sale, as a going concern. This provision is a minor one, in the overall scheme of their plan. Their reorganization will be funded by the sale or development of real estate and their large cattle operation, not by the eventual sale of the heavily encumbered club. The evidence indicates that if the club is sold, there will be no proceeds for the estate, since the four mortgages against the property far exceed the fair market value of the property.[3] Therefore, the Court finds that the club is not necessary to an effective reorganization.

With respect to the equity issue, the Court finds the Wyandotte Bank's valuation of the land and building more credible than the debtors' valuation. Wyandotte Bank's expert witness was a highly qualified and experienced real estate broker and appraiser who was quite familiar with the subject property, having appraised it twice before the 1983 appraisal. The debtors' only evidence was Mr. Carson's opinion of the value. While the debtor's opinion was pertinent, it did not credibly controvert the valuation of Wyandotte Bank's appraiser. Wyandotte Bank's appraiser valued the land at $2.00 per square foot, which was considerably less than actual sales of neighboring commercial property. However, the appraiser justified this to the Court's satisfaction, since the neighboring properties were smaller, more marketable tracts, with better access. Wyandotte Bank's appraiser also justified his depreciated valuation of the building with a detailed description of the deteriorating and inhabitable condition of the building. The Court therefore accepts Wyandotte Bank's appraised value of the land and building at $421,680.00. Neither party submitted evidence on the value of the personalty collateral on the notes. Thus, the total fair market value of Wyandotte Bank's collateral is unknown.

Moreover, Wyandotte Bank did not clearly establish the balance due and owing it. It is unclear whether Wyandotte Bank paid any of the delinquent taxes or insurance premiums for the debtor. It is also unclear to what extent postpetition interest should be included in Wyandotte Bank's claim, under § 506(b), as an oversecured creditor. These uncertainties render an analysis of equity untenable. The Court therefore finds that Wyandotte Bank has failed in its burden of proving no equity. Therefore, Wyandotte Bank is not entitled to relief from stay under § 362(d)(2).

**3.** *The Court does not decide the issue raised by the debtors as to whether junior liens can be considered in determining whether there is equity. See In re Gardner, 14 B.R. 455 (Bkrtcy.E. D.Pa.1981). But see In re Spring Garden Foilage, Inc., 15 B.R. 140 (Bkrtcy.M.D.Fla.1981).*

*The Court merely notes in passing the existence of three junior liens and that the amount of those liens indicates that the debtors' sale of Westside would not generate funds to reorganize.*

### III. § 362(d)(1)

Adequate protection is not defined in the Code, perhaps because legislative intent was for it to be a balancing concept applied on an ad hoc basis. See H.R. 95–595, 95th Cong., 1st Sess., (1977) 339; U.S. Code Cong. & Admin.News 1978, pp. 5787, 6295. The prevailing view is that a number of factors should be considered, and the benefits and harms to each party weighed, rather than deciding the issue solely on the existence or inexistence of an equity cushion. See *In re Trident Corp.,* 19 B.R. 956, 958, CCH ¶ 68686 (Bkrtcy.E.D.Pa.1982), *aff'd* 22 B.R. 491 (U.S.D.C.E.D.Pa.1982); *In re Tucker,* 5 B.R. 180, 183, 184, 6 B.C.D. 699, 2 C.B.C.2d 535 (Bkrtcy.S.D.N.Y.1980); *In re 5-Leaf Clover Corp.,* 6 B.R. 463, 466 (Bkrtcy. S.D.W.Va.1980).

An equity cushion may not provide adequate protection when the property is depreciating and interest is accumulating, because at some point, the cushion will be dissipated and such impending dissipation may constitute a lack of adequate protection in and of itself. See *In re 5-Leaf Clover Corp., supra,* at 466. Other things the Court should consider are: whether the property is insured from fire or hazard; whether the debtor is maintaining the property and making necessary repairs; and whether the debtor is paying taxes. *In re Tucker, supra* at 183–184, *In re Trident Corp., supra,* at 958.

Here the debtors have failed on all counts. They have not paid anything to Wyandotte Bank in over a year and per diem interest is $137.11. They have not paid insurance, taxes, utilities, or for repairs. They have not protected the property from vandalism. In short, Wyandotte Bank has been subject to continuous depreciation and risk of its collateral and continuous accumulation of the interest due and owing it. The debtors have not and do not now propose any means to improve or protect Wyandotte Bank's position, other than letting Wyandotte Bank make repairs at its own expense.

The Court therefore finds that Wyandotte Bank's interest is not adequately protected, and that there is sufficient cause to grant Wyandotte Bank relief from the automatic stay under 11 U.S.C. § 362(d)(1).

THE FOREGOING CONSTITUTES MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### CERTIFICATE OF REVIEW

The attached order has been certified by Bankruptcy Judge Benjamin E. Franklin under Rule 42(e)(2)(a) of the Local Rules of Court for this District. Upon review of the same in accordance with Rule 42(e)(2)(b) of said Local Rules, the undersigned hereby approves and adopts said order in its entirety including the findings of fact and conclusions of law therein contained.