**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**October 16, 2019**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION[*]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE HELEN LOUISE MEAD,

    Debtor.

_____

HELEN LOUISE MEAD,

    Appellant,

v.

HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE FOR
STRUCTURED ADJUSTABLE RATE
MORTGAGE LOAN TRUST 2004-1, and
ETRADE BANK,

    Appellees.

BAP No. CO-19-001

Bankr. No. 18-10447
Chapter 13

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Helen Louise Mead, pro se.

Nichol Williams (Joseph DeGiorgio with her on the brief) of Barrett Frappier &
Weisserman, LLP, Denver, Colorado for Appellee HSBC Bank USA, National
Association, as Trustee for Structured Adjustable Rate Mortgage Loan Trust 2004-1.

---

[*]    This unpublished opinion may be cited for its persuasive value, but is not
precedential, except under the doctrines of law of the case, claim preclusion, and issue
preclusion. 10th Cir. BAP L.R. 8026-6.

Aaron Waite (Deanna Westfall of Weinstein & Riley, P.S., Broomfield, Colorado, with him on the brief) of Weinstein & Riley, P.S., Las Vegas, Nevada for Appellee ETrade Bank.

———————————————————

Before **CORNISH**, **HALL**, and **LOYD**,[**] Bankruptcy Judges.

———————————————————

**CORNISH**, Bankruptcy Judge.

———————————————————

This Court is asked to review the propriety of the Bankruptcy Court's order which allowed two mortgage creditors to proceed with state court foreclosure actions. The subject real estate was Helen Louise Mead's homestead located near Aspen, Colorado. Mead claims the real estate had an equity cushion and the automatic stay should not have been lifted. We disagree and AFFIRM.

## I.  Factual Background

Helen Louise Mead (the "Debtor") resides at 8019 Woody Creek Road, Woody Creek, Colorado (the "Property"). The Debtor executed an adjustable rate promissory note in the principal amount of $780,000 and a deed of trust encumbering the Property in favor of Colorado Federal Savings Bank on December 4, 2003. The Debtor received a loan modification on the principal due on September 25, 2009.[1] HSBC Bank USA, National Association, as Trustee for Structured Adjustable Rate Mortgage Loan Trust 2004-1 ("HSBC") is the current holder of the promissory note and first deed of trust. The Debtor initiated a home equity line of credit with Countrywide Home Loans, Inc. on

———————————————————

[**] Honorable Janice D. Loyd, U.S. Bankruptcy Judge, United States Bankruptcy Court for the Western District of Oklahoma, sitting by designation.

[1] Appellees' Joint App. at 112.

2

April 5, 2006. The line of credit is secured by a second priority deed of trust. ETrade Bank ("ETrade") is the current beneficiary of the line of credit agreement and the second deed of trust.

The Debtor defaulted on her obligations to both HSBC and ETrade. HSBC filed a foreclosure proceeding in state court. The Debtor filed a chapter 13 petition on January 23, 2018, staying HSBC's foreclosure. In Schedule A of her petition, the Debtor valued the Property at $770,000 subject to $1,159,782 in claims including HSBC, ETrade, and a third priority lien creditor.

HSBC filed its *Motion for Relief from Automatic Stay* on April 11, 2018, seeking relief from the stay under 11 U.S.C. § 362(d)(1) and (2) ("HSBC's Motion").[2] HSBC asserted the Debtor's postpetition arrearages totaled $14,163.96 and the monthly mortgage payment continued to accrue at $4,721.32 per month. HSBC argued the Property lacked equity to provide adequate protection under § 362(d)(1), noting the Debtor's $770,000 valuation compared to its claim of $738,840.35 and second and third liens of $338,620 and $75,162, respectively. HSBC also argued it was entitled to relief from the stay because the Property lacked any equity and was not necessary for an effective reorganization under § 362(d)(2).

ETrade filed its *Motion for Relief from Stay* on May 16, 2018, seeking relief under § 362(d)(1) and (2) ("ETrade's Motion").[3] ETrade asserted the Debtor's postpetition

---

[2]   Appellees' Joint App. at 65. All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[3]   Appellees' Joint App. at 136.

arrearages totaled $10,181.40 and the monthly mortgage payment continued to accrue at $2,545.35 per month. ETrade sought relief under § 362(d)(1) as it was not adequately protected since the Debtor failed to make any postpetition payments. ETrade also sought relief under § 362(d)(2) because the Property lacked equity and was not necessary for an effective reorganization.

The Bankruptcy Court conducted a final evidentiary hearing on HSBC and ETrade's Motions on June 21, 2018.[4] At the hearing, the Debtor's testimony suggested the $770,000 valuation was no longer applicable, favoring a valuation of over $1,000,000. The Debtor pointed to the Property's proximity to the world-renowned Aspen ski resorts and the exclusivity of being bordered by federal conservation lands. The Debtor referenced an appraisal report sent to her by HSBC valuing the Property at $4,189,000, suggesting that amount was closer to the actual value of the Property.

HSBC offered the testimony of a Nationstar Mortgage, LLC employee as evidence. Nationstar Mortgage, LLC serviced the promissory note on behalf of HSBC. The employee testified the loan was in default and that the most recent appraisals valued the Property at $770,000. The witness explained the $4,189,000 valuation, was a computer-generated value based on recent sales and that it did not represent a true

---

[4] The Bankruptcy Court held a preliminary non-evidentiary hearing on the motions on May 30, 2018.

valuation of the Property.[5] ETrade introduced evidence suggesting the value of the Property was not more than $1,250,000.[6]

The Debtor also testified that there were three rental units on the Property in addition to her residence, which brought in between $11,000 and $12,000 of rental income per month.[7] The Debtor argued the Property was necessary for an effective reorganization because she relied on its rental income to pay her mortgages and living expenses. However, the Debtor did not introduce any evidence to support finding any rental income existed. Furthermore, the Debtor suggested her chapter 13 plan of reorganization would seek to modify claims secured by the Property, her principal residence, despite § 1322(b)(2)'s anti-modification provision.

The Bankruptcy Court issued its opinion granting both HSBC and ETrade's Motions for cause under § 362(d)(1) and (2) on December 20, 2018.[8] The Bankruptcy Court valued the Property at $770,000, the amount listed in Schedule A. The Bankruptcy Court found neither HSBC nor ETrade were adequately protected, little to no equity existed in the Property, and the Property was not necessary for the Debtor's effective reorganization.

*Section 362(d)(1) findings*

The Bankruptcy Court found that while the $770,000 valuation exceeded HSBC's claims by $31,159.65, HSBC was entitled to postpetition interest and fees under § 506(b).

---

[5]     *Tr.* at 80, *in* Appellees' Joint App. at 374.
[6]     *Id.* at 91, *in* Appellees' Joint App. at 385.
[7]     *Id.* at 64, *in* Appellees' Joint App. at 358.
[8]     *Order*, *in* Appellees' Joint App. at 428.

Adding $27,023.08 in postpetition interest to the claim, the Property still had $4,136.57 in equity. However, the Bankruptcy Court found the 0.5% equity cushion did not adequately protect HSBC and would be erased upon adding additional accrued interest, costs, and attorneys' fees to HSBC's claim. The Bankruptcy Court further found the Property had no equity to protect ETrade's second lien and cause existed to grant ETrade relief from the automatic stay.

### Section 362(d)(2) findings

The Bankruptcy Court also considered whether the Property was necessary to the Debtor's effective reorganization under § 362(d)(2). The Bankruptcy Court noted, "the parties agree[d] the Debtor's ability to effectively reorganize depend[ed] on the Debtor's ability to modify her HSBC mortgage pursuant to § 1322."[9] The Debtor argued that because she rented several units on the Property, it was transformed from being her principal residence and no longer subject to § 1322(b)(2)'s anti-modification provision. The Bankruptcy Court adopted a bright-line test, concluding "§ 1322(b)(2) applies 'as long as the debtor principally resides in *some portion* of the real property.'"[10] Because the Debtor conceded there was no prospect of reorganization without modifying the mortgage, the Bankruptcy Court could not find the Property was necessary to an effective reorganization. The Debtor filed a timely appeal of the Bankruptcy Court's *Order* granting both creditors relief from the automatic stay.

---

[9]     *Order* at 7, *in* Appellees' Joint App. at 434.
[10]    *Id.* at 10, *in* Appellees' Joint App. at 437 (quoting *In re Lister*, 593 B.R. 587, 592 (Bankr. S.D. Ohio 2018)).

## II.    Jurisdiction & Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of Bankruptcy Courts within the Tenth Circuit."[11] An order granting relief from the automatic stay is a final order for purposes of appellate review.[12] Neither party in this case elected for these appeals to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over this appeal.

A ruling on a motion for relief from the automatic stay is reviewed for abuse of discretion.[13] "An abuse of discretion . . . may occur when a ruling is premised on an erroneous conclusion of law or on clearly erroneous fact findings."[14] The Bankruptcy Court's conclusions of law are reviewed *de novo*.[15] "When an appellate court reviews a [trial] court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a [trial] [] court had abused its discretion in making a factual finding only if the finding was clearly erroneous."[16]

---

[11]    *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

[12]    *Rajala v. Gardner*, 709 F.3d 1031, 1034 (10th Cir. 2013) (citing *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 n.3 (10th Cir. 1994)).

[13]    *Franklin Sav. Ass'n*, 31 F.3d at 1023 (citing *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987)).

[14]    *In re JE Livestock, Inc.*, 375 B.R. 892, 894 (10th Cir. BAP 2007) (citing *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998)).

[15]    *Id.* (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

[16]    *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990).

### III. Analysis

The Debtor argues the Bankruptcy Court erred by failing to hold an evidentiary hearing and by granting HSBC and ETrade relief from the automatic stay. The record before this Court indicates the Bankruptcy Court held an evidentiary hearing on HSBC and ETrade's Motions on June 21, 2018.[17] The Debtor was represented by counsel at the hearing. The Debtor appears to argue that although she received notice of the evidentiary hearing, she was not allowed to fully state her case at the hearing.[18]

However, the Debtor does not specifically point the Court to instances where she was denied the opportunity to present her objections. Upon review of the transcript, the Bankruptcy Court did not deny the Debtor due process. The Debtor was present and testified at the hearing. On numerous occasions, the Debtor's counsel attempted to direct the Debtor to issues related to the valuation of the Property and her objection to HSBC and ETrade's Motions. Likewise, the Bankruptcy Court asked only questions relevant to the issue of stay relief. As the Debtor was adequately afforded due process, we proceed to the substantive issues on appeal.

---

[17]     *Tr.*, *in* Appellant's App. at 21.

[18]     The Debtor refused to discuss the merits of her objection to HSBC and ETrade's Motions during the hearing before the Bankruptcy Court and at oral argument before this Court. Instead, the Debtor alleged a criminal organization is responsible for depressing the value of her residence and driving her into foreclosure. The Debtor provided no evidence to the Bankruptcy Court to support these allegations.

### a. Section 362(d)(1) – Lack of Adequate Protection

Section 362(d)(1) provides the Bankruptcy Court "shall grant relief from the stay . . . for cause, including lack of adequate protection of an interest in the property . . . ."[19] The primary factor, in considering whether a creditor's interest is adequately protected "is the existence of an adequate equity cushion. Most courts find that a creditor's interest is adequately protected if the value of its security exceeds the amount of its claim by a 'sufficient' amount."[20] Although equity above the amount of a secured claim is one means of protecting a creditor's interest, adequate protection can also come in the form of periodic payments, a replacement lien, or other such protections determined on a case-by-case basis.[21]

The Debtor contests the Bankruptcy Court's findings that HSBC and ETrade were not adequately protected by the $770,000 valuation of the Property. Upon reviewing the record, the Bankruptcy Court did not err in reaching this valuation and determining the creditors lacked adequate protection. The Debtor, under penalty of perjury, valued the Property at $770,000 in her schedules. The only evidence the Debtor presented to contradict the $770,000 valuation was her testimony and HSBC's $4,189,000 valuation.

---

[19]     11 U.S.C. § 362(d)(1).

[20]     *In re Carson*, 34 B.R. 502, 506 (D. Kan. 1983); *In re Indian Palms Assocs.*, 61 F.3d 197, 207 (3d Cir. 1995) (first citing *In re Colonial Center, Inc.*, 156 B.R. 452, 459 (Bankr. E.D. Pa. 1993), and then citing *La Jolla Mortg. Fund v. Rancho El Cajon Assocs.*, 18 B.R. 283, 289 (Bankr. S.D. Cal. 1982)) ("[I]n determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's 'equity cushion'—the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims.").

[21]     3 *Collier on Bankruptcy* ¶ 362.07 (Richard Levin & Henry J. Sommer eds., 16th ed. 2019).

The Bankruptcy Court found the Debtor's testimony on the subject of valuation to be "unpersuasive."[22] When applying the abuse of discretion standard, appellate courts must "defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value."[23] We, like the Bankruptcy Court, fail to find any evidence in the record to support the Debtor's testimony.[24] At the oral argument of this appeal, the Court explicitly asked the Debtor to point to items in the record supporting her claims as to the Property's value. The Debtor was unable to direct this Court to any such evidence in the record. Accordingly, we defer to the Bankruptcy Court's judgment regarding the Debtor's credibility and find no abuse of discretion.

Although it is troubling that HSBC valued the Property at $4,189,000 in a notice sent to the Debtor,[25] nothing in the record provided to this Court identifies the basis of that valuation. While the Bankruptcy Court considered the $4,189,000 for the limited purpose of analyzing HSBC's use of the figure, it found HSBC never relied on the valuation and considered it inaccurate. The Court must again defer to the Bankruptcy Court's findings that HSBC's witness was credible as nothing in the record suggests HSBC relied on the $4,189,000 valuation. As such, the Bankruptcy Court did not err in discounting the $4,189,000 valuation and valuing the Property at $770,000.

---

[22]     *Order* at 4, *in* Appellees' Joint App. at 431.
[23]     *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).
[24]     *Order* at 4, *in* Appellees' Joint App. at 431 ("Debtor did not produce any other evidence to corroborate any aspect of her testimony.").
[25]     *Exhibit 2* at 3, *in* Appellees' Joint App. at 206.

The Bankruptcy Court also found the Property lacked equity to adequately protect HSBC and ETrade based on the $765,863.43 balance due to HSBC as of May 2019. Based on HSBC's claim amount, the Debtor had $4,136.57 in equity in the Property or a 0.5% equity cushion. The Bankruptcy Court recognized the 0.5% margin of equity was too thin to adequately protect HSBC.[26] HSBC's accruing monthly payments and interest would quickly erode any equity in the Property and leave HSBC undersecured and ETrade completely unsecured. Furthermore, the Debtor did not propose any additional means of adequate protection, such as periodic payments. Accordingly, the Bankruptcy Court did not err in finding HSBC and ETrade were not adequately protected and did not abuse its discretion in granting relief from the automatic stay under § 362(d)(1).

b. **Section 362(d)(2) – Lack of Equity and Not Necessary for Effective Reorganization**

Upon finding the Property lacked sufficient equity to protect HSBC's interest, the Bankruptcy Court also considered whether the Property was necessary for the Debtor's effective reorganization under § 362(d)(2). Section 362(d)(2) places the burden of showing that collateral lacks equity on a moving party. Once that burden is met, the burden of proving a Property is necessary for effective reorganization falls on the party

---

[26]     *See In re Southerton Corp.*, 46 B.R. 391, 399 (Bankr. M.D. Penn. 1982) (citing *In re Rogers Dev. Corp. Heritage Sav. & Loan Ass'n v. Rogers Dev. Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Va. 1980)) ("Where . . . the debtor's margin of equity is slim, the court is clearly entitled to consider the rate at which accumulating interest is absorbing the debtor's equity cushion."); *In re Liona Corp., N.V.*, 68 B.R. 761, 767 (Bankr. E.D. Penn. 1987) (7 percent equity cushion will rarely provide adequate protection) (quoting *In re Lemay*, 18 B.R. 659, 661 (Bankr. D. Mass. 1982)); *In re Tucker*, 5 B.R. 180, 183 (Bankr. S.D.N.Y. 1980) (7.4% equity cushion insufficient to adequately protect creditor).

opposing relief from the automatic stay.[27] Such a showing requires that there "be a reasonable possibility of a successful reorganization within a reasonable time."[28]

Having established the Debtor lacked sufficient equity in the Property, the Bankruptcy Court considered whether it was necessary for an effective reorganization. The Debtor testified she needed the Property to effectively reorganize because she lived there and received income from rental units on the Property. However, the Debtor indicated she would only be able to successfully reorganize under chapter 13 if the Bankruptcy Court allowed her to modify the secured claims against the Property in contravention of § 1322(b)(2). The Debtor argued § 1322(b)(2) did not apply because, in addition to using it as her residence, she also operated a rental business on the Property. The Debtor argued this changed the character of the Property from a principal residence and allowed her to modify claims against the Property. The Bankruptcy Court rejected this argument, concluding "as long 'as the debtor principally resides in *some portion* of the real property,'" it is her primary residence and § 1322(b)(2) prevented the Debtor from modifying claims secured by the Property.[29]

The text of § 1322(b)(2) provides a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that

---

[27]    11 U.S.C. § 362(g).

[28]    *In re Gindi*, 642 F.3d 865, 875 (10th Cir. 2011) (quoting *United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988)), *rev'd on other grounds TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

[29]    *Order* at 10, *in* Appellees' Joint App. at 437 (quoting *In re Lister*, 593 B.R. 587, 592 (Bankr. S.D. Ohio 2018)).

is the debtor's principal residence."[30] Neither the Tenth Circuit nor this Court have addressed the modification of claims secured by a multi-use residence in the context of § 1322(b)(2).[31] However, on numerous occasions, the Tenth Circuit has indicated "§ 1322(b)(2) expressly prohibits modification of the rights of home mortgage lenders."[32] Applying the express prohibition contained in § 1322(b)(2), the Bankruptcy Court did not err in holding a debtor may not modify a claim secured by real property that is inclusive of a debtor's principal residence.

In this case, the Debtor acknowledged that while there are separate rental units on the Property, it is also her principal residence. As the Property is the Debtor's principal residence, § 1322(b)(2) prohibits her from modifying the claims of any creditors secured by the Property. We also agree with the Bankruptcy Court that the case cited by the Debtor, *In re Ramirez*, is not controlling and is distinguishable.[33] Accordingly, we find no error in the Bankruptcy Court's application of § 1322(b)(2) to the present facts. Upon finding the Debtor could not successfully reorganize without modifying the claims

---

[30]    11 U.S.C. § 1322(b)(2).
[31]    This Court expressly declined to address the issue in *In re Picht*, 428 B.R. 885, 894 (10th Cir. BAP 2010).
[32]    *Wade v. Bradford*, 39 F.3d 1126, 1129 (10th Cir. 1994); *In re Woolsey*, 696 F.3d 1266, 1279 (10th Cir. 2012) ("§ 1322(b)(2) itself prohibits modification of the rights of the 'holder of a secured claim' supported by a lien on the debtor's home.").
[33]    62 B.R. 668, 669 (S.D. Cal. 1986). In *Ramirez*, the court allowed modification of a claim secured by a debtor's principal residence that also included rental units because it found evidence the lender had actual knowledge of the property's intended use at the time it made the loan and took those factors into account when assessing the risk of the loan. Furthermore, after *Ramirez*, the Ninth Circuit BAP held § 1322(b)(2) "applies to any property that is used as the debtor's principal residence, notwithstanding the fact" the property may be used for other purposes. *In re Wages*, 508 B.R. 161, 167 (9th Cir. BAP 2014) (citing *In re Macaluso*, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000)).

secured by her principal residence, the Bankruptcy Court had no option but to grant relief from the automatic stay under § 362(d)(2).

## IV. Conclusion

The Debtor, like many others seeking relief under the Bankruptcy Code, is faced with the difficult situation of losing her home. While the Court is sympathetic to the Debtor's situation, our review of the record presented to the Bankruptcy Court does not suggest the Bankruptcy Court abused its discretion in granting relief from the automatic stay. The Debtor valued the Property at $770,000 in her schedules and although she testified, she presented no credible evidence to support her contentions that the true value exceeded $1,000,000. The $770,000 valuation provided little to no equity to protect the interests secured by the Property. Furthermore, the Debtor admitted she had no means of effectively reorganizing absent modifying the claims secured by the Property, which is directly prohibited by § 1322(b)(2). Accordingly, the Bankruptcy Court did not abuse its discretion in determining cause existed to grant relief from the automatic stay. Therefore, we AFFIRM.[34]

---

[34] The Debtor filed the *Motion to Make Full Unrestricted Public Disclosure of All Documents in Case #19-1 Immediately Readily Available to Public View and to not Dismiss this Case on Trivial Technicality*, BAP ECF No. 48. Because documents filed on this Court's docket are already publicly available and the Debtor receives copies of all pleadings filed in this appeal, the Debtor's motion is DENIED.

14