[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-10349

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 9, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-02207-CV-RLV-1
BKCY No. 99-78810-BKC-CR

KELDRIC DANTE MOSLEY,

Debtor.

_____

EDUCATIONAL CREDIT MANAGEMENT
CORP.,

Plaintiff-Appellant,

versus

KELDRIC DANTE MOSLEY,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(August 9, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT, and JOHN R. GIBSON,[*] Circuit Judges.

JOHN R. GIBSON, Circuit Judge:

Educational Credit Management Corporation ("Educational Credit") appeals from the district court's decision affirming the bankruptcy court's order discharging Keldric Dante Mosley's student loan debt on the basis of undue hardship. We affirm.

Mosley incurred several student loans while attending Alcorn State University, where he majored in history, between 1989 and 1994. At Alcorn State, Mosley joined the Army Reserve Officers' Training Corps. During his training in the summer of 1993, Mosley's hip and back were injured when he fell from a tank. Medical problems associated with his injury ultimately led him to resign his commission.

In the spring of 1994, Mosley left Alcorn State because it was not offering a class he needed to graduate and because he believed his mother's health was deteriorating. He lived with his mother in Atlanta, Georgia, from 1994 to 1999. During this time, Mosley had brief stints at several jobs, including jobs at Bruno's Supermarket, United Parcel Service, City Sanitation, and a moving company. He attempted to attend heavy equipment school to learn a trade, but he was unable to

* Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

complete the training or keep any of his jobs because he was depressed, drank heavily, and experienced physical limitations from his injury. Mosley also attempted to go back to school but could not obtain financial aid because of the debts he had incurred to attend Alcorn State. He filed for Chapter 7 bankruptcy pro se in December of 1999 and obtained a discharge; the discharge did not include his student loans.

In 2000, Mosley's mother committed him to Georgia Regional Hospital, a state-supported mental health facility, where he stayed for approximately one to two weeks and was diagnosed with anxiety and depression. After his release, Mosley sought treatment for depression and chronic back pain at the Department of Veterans' Affairs. Veterans' Affairs placed him on prescription medication for depression, anxiety, back pain and swelling, and high blood pressure, which he continues to take but which makes him unable "to function."

Mosley is registered with the Georgia Department of Labor and has sought work through the labor pool since 2000 with little success. He worked at an airport for a short time but was unable to meet the physical demands of the job because his medication made him groggy and he cannot do heavy lifting. His monthly income consists primarily of disability benefits of $210 from the Veterans' Administration, and he relies on food stamps to survive. Mosley has

been homeless since 2000 and frequently sleeps at his aunt's house. He has no car.

Mosley's student loans total approximately $45,000 and have been in default since 1996. He has not made any payments since then and, in 2004, filed a pro se motion to reopen his bankruptcy case and cease collection activities. The bankruptcy court granted the motion, and Mosley filed an adversary proceeding against USA Funds, the loan holder at the time, seeking discharge of his student loans on the basis of undue hardship. Mosley's loans were transferred to Educational Credit, which accepts title to certain federal student loan accounts on which the borrower has filed bankruptcy, and Educational Credit intervened and replaced USA Funds in the action.

Proceeding pro se, Mosley was the sole witness and testified before the bankruptcy court about his medical problems, work history, and living situation. He introduced Social Security and Medicare earnings statements showing that his annual taxable earnings between 1994 and 2004 have never exceeded $7,700 and have been as low as $1,287. The court also admitted a letter from an Emory University professor, Dr. Angel Iglesias, on Veterans' Affairs letterhead stating that Mosley had been diagnosed with hypertension, depression, anxiety, and lower back pain but that x-rays did not show significant pathology. Educational Credit objected to several other doctors' letters that Mosley attempted to introduce, and

4

the bankruptcy court reluctantly excluded them because they had not been properly authenticated. The bankruptcy court granted the discharge of Mosley's student loans even without these letters, however, reasoning that Mosley's testimony that he was in a vicious cycle of illness and homelessness that prevented him from working was credible and demonstrated that repayment would be an undue hardship. The bankruptcy court initially issued these findings orally and entered a short written order granting the discharge; about a month after the hearing, it issued and published a supplemental order restating its findings and rationale and citing the relevant case law. In re Mosley, 330 B.R. 832 (Bankr. D. Ga. 2005).

Educational Credit appealed to the district court, arguing that Mosley failed to meet his burden because he failed to produce medical evidence to corroborate his testimony that his disabilities would prevent him from repaying his loans. It also moved to strike the supplemental order the bankruptcy court issued for publication after the appeal was filed. The district court denied the motion to strike, reasoning that the supplemental order did not alter any of the findings of fact or conclusions of law the bankruptcy court had reached orally in granting Mosley's discharge, but only elaborated on its rationale, and thus was not prejudicial to Educational Credit. The district court affirmed the discharge, summarily approving of the reasoning set forth in the bankruptcy court's

supplemental order and concluding that Mosley produced sufficient evidence of his likely inability to repay the loans. Educational Credit appealed to this Court, arguing that Mosley failed to meet his burden of proof and that the bankruptcy court lacked jurisdiction to enter the supplemental order.

In this appeal from the district court's affirmance of the bankruptcy court's order, we review the bankruptcy court's decision. See Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 398 (4th Cir. 2005). Educational Credit challenges the bankruptcy court's conclusion that repayment of the student loans would impose an undue hardship on Mosley, which is a mixed question of law and fact. Id. We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. See Hemar Ins. Corp. of Am. v. Cox (In re Cox), 338 F.3d 1238, 1241 (11th Cir. 2003).

The Bankruptcy Code provides that student loans generally are not to be discharged. 11 U.S.C. § 523(a)(8). A narrow exception is made, however, where "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." Id. The Bankruptcy Code does not define "undue hardship," but this Circuit has joined several others in adopting the standard set forth in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395, 396 (2d Cir. 1987). See In re Cox, 338 F.3d at 1241. To establish

undue hardship, the Brunner standard requires the debtor to prove by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d at 396.

Educational Credit does not contest that Mosley has satisfied the first requirement, an inability to maintain a minimal standard of living, as he lives below the poverty line and has for several years. It contends that the bankruptcy court improperly relaxed Mosley's evidentiary burden on the second and third requirements in light of his status as an impoverished pro se litigant. The bankruptcy court concluded that Mosley established undue hardship with his credible testimony that he has tried to obtain work but, for ten years, his "substantial physical and emotional ailments" have prevented him from holding a steady job. While the letter from Dr. Iglesias corroborates Mosley's testimony that he has been diagnosed with several illnesses, the court's conclusion that those illnesses are likely to impair Mosley's ability to repay his loans was based on Mosley's testimony. Citing several bankruptcy court cases and two Courts of Appeals cases, Educational Credit argues that corroborating medical evidence

7

independent from the debtor's testimony is required to make the second Brunner showing where medical disabilities are the "additional circumstances" that make it unlikely the debtor will be able to repay his loans.

The Sixth Circuit recently rejected Educational Credit's position in Barrett v. Educational Credit Management Corp., 487 F.3d 353, 356 (6th Cir. 2007). In Barrett, the bankruptcy court discharged the debtor's student loans after concluding that the debtor established undue hardship under Brunner because various medical conditions, particularly avascular necrosis, caused him severe pain that prevented him from working and made employers reluctant to hire him. Id. at 357-58. The bankruptcy court's conclusion was based largely on the debtor's testimony at the adversary proceeding, where the debtor also introduced tax records and a letter from his doctor that documented his cancer treatment but not his avascular necrosis. Id. at 361. The Sixth Circuit concluded that this evidence was sufficient to support the conclusion of undue hardship, rejecting Educational Credit's argument that the debtor was required to produce corroborating medical evidence. Id. at 359. The court reasoned that requiring corroborating evidence when the debtor cannot afford expert testimony or documentation "imposes an unnecessary and undue burden on [the debtor] in establishing his burden of proof." Id. at 360 (quoting Bankruptcy Appellate Panel opinion) (internal quotation marks omitted). As the court explained, the crucial

8

requirement is that the debtor show how his medical conditions prevent him from working, id., and this can be accomplished by an array of evidence, including the debtor's credible testimony, id. at 361.

We are persuaded by Barrett and decline to adopt a rule requiring Mosley to submit independent medical evidence to corroborate his testimony that his depression and back problems were additional circumstances likely to render him unable to repay his student loans. We see no inconsistency between Barrett's holding that the debtor's detailed testimony was sufficient evidence of undue hardship and the Courts of Appeals cases cited by Educational Credit where debtors' less detailed testimony was held to be insufficient. See In re Tirch, 409 F.3d 677, 682 (6th Cir. 2005) (debtor's testimony insufficient to show undue hardship because it did not explain how her health problems prevented her from working); Brightful v. Penn. Higher Educ. Assistance Agency, 267 F.3d 324, 328 (3d Cir. 2001) (debtor's testimony insufficient because it lacked detail to explain how her condition impaired her ability to work). In particular, we observe that Barrett specifically stated that Tirch does not require a debtor to produce expert testimony to meet his burden of showing that his medical conditions impair his ability to work, refuting Educational Credit's interpretation of Tirch. Barrett, 487 F.3d at 359.

Educational Credit also argues that Mosley's medical prognosis is a subject requiring specialized medical knowledge under Fed. R. Evid. 701 and 702, made applicable to the adversary proceeding in bankruptcy by Bankruptcy Rule 9017, and that Mosley was not competent to give his opinion on this matter. Mosley, however, did not purport to give an opinion on his medical prognosis, but rather testified from personal knowledge about how his struggles with depression, back pain, and the side effects of his medication have made it difficult for him to obtain work. The bankruptcy court did not abuse its discretion by admitting this testimony. See Barrett, 487 F.3d at 362 (while debtor cannot give an opinion on his prognosis or the medical cause of his ailments, he can and must testify about how his disabilities affect his ability to work to carry his burden).

We now turn to Educational Credit's argument that the record does not support a conclusion of undue hardship because Mosley's testimony did not establish the last two parts of the Brunner standard, that he likely will be unable to repay his student loans in the future and that he has made good faith efforts to repay the loans. Educational Credit points out that the Brunner requirements are "demanding" ones, Brightful, 267 F.3d at 328, and contends that the bankruptcy court failed to apply them with the appropriate level of rigor. The bankruptcy court indeed expressed concern that a strict application of Brunner treats too harshly debtors living in abject poverty, citing Educational Credit Management

10

Corp. v. Polleys, 356 F.3d 1302 (10th Cir. 2004); however, the court ultimately analyzed Mosley's case under the complete Brunner framework as our precedent requires. Under Brunner, undue hardship does not exist simply because the debtor presently is unable to repay his or her student loans; the inability to pay must be "likely to continue for a significant time," Cox, 338 F.3d at 1242, such that there is a "certainty of hopelessness" that the debtor will be able to repay the loans within the repayment period, Brightful, 267 F.3d at 328 (citation and internal quotation omitted).

The bankruptcy court correctly concluded that Mosley's testimony met this standard. In showing that "additional circumstances" make it unlikely that he will be able to repay his loans for a significant period of time, Mosley testified that his depression and chronic back pain have frustrated his efforts to work, and thus his ability to repay his loans, as well as to provide himself with shelter, food, and transportation, for several years. Mosley's medical problems are confirmed by Dr. Iglesias's letter and not refuted by Educational Credit. Mosley's testimony that it has been difficult for him to hold a job is also unrefuted and is corroborated by his Social Security earnings statements. He testified that his back problems preclude him from heavy lifting, which rules out most of the jobs available in the labor pool from which he seeks work. Exacerbating the problem, his medications make it difficult for him to function. He did not finish college and has been unable to

complete the training necessary to learn a trade. Mosley relies on public assistance programs for health care and food, and the bankruptcy court had before it sufficient evidence to support a finding that there is no reason to believe that Mosley's condition will improve in the future. Mosley's evidence of medical problems, lack of skills, and dire living conditions support the bankruptcy court's finding that it is highly unlikely he will become able to repay his loans. See Educ. Credit Mgmt. Corp. v. Nys, 446 F.3d 938, 947 (9th Cir. 2006) (relevant "additional circumstances" include debtor's serious physical or mental disability, lack of usable or marketable job skills, and lack of assets that could be used to pay the loan).

The bankruptcy court also correctly concluded that Mosley's testimony established the final Brunner requirement, that he has made good faith efforts to repay his student loans. Mosley has not made payments since 1996, but a debtor's "failure to make a payment, standing alone, does not establish a lack of good faith." Polleys, 356 F.3d at 1311. Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses; his default should result, not from his choices, but from factors beyond his reasonable control. See In re Roberson, 999 F.2d 1132, 1136 (7th Cir. 1993). Mosley has attempted to find work, as demonstrated by the series of jobs he held while living with his mother from 1994 to 1999 and his participation in the labor pool since 2000.

12

Because of his medical conditions, Mosley has been largely unsuccessful, and thus has not had the means even to attempt to make payments. As his Social Security statements show, his income has been below the poverty line for years. He lives without a home and car and cannot further minimize his expenses. Mosley produced sufficient evidence to support the bankruptcy court's conclusion that he has made good faith efforts to obtain work so that he can support himself and repay his debts.

Educational Credit argues that the good faith requirement obligated Mosley to attempt to negotiate a repayment plan under the Income Contingent Repayment Program (which adjusts the debtor's payment in response to hardship and extends the repayment period to as much as 25 years) or seek an administrative discharge based on disability before pursuing this undue hardship discharge in bankruptcy. While a debtor's effort to negotiate a repayment plan certainly demonstrates good faith, see Frushour, 433 F.3d at 402-03, courts have rejected a per se rule that a debtor cannot show good faith where he or she has not enrolled in the Income Contingent Repayment Program. See Barrett, 487 F.3d at 364; Tirch, 409 F.3d at 682. Educational Credit points out that Mosley's current payments under the Program would be zero, but the Program is not always a viable option for debtors like Mosley, as it may require them effectively to "trad[e] one nondischargeable debt for another" because any debt that is discharged under the program is treated

as taxable income.  Barrett, 487 F.3d at 364.  In this instance, it is questionable whether Mosley even knew about alternative repayment options, and, in light of his dire living conditions and persistent inability to obtain steady work, the bankruptcy court had sufficient evidence from which to conclude that these options would not have provided Mosley a realistic solution to his inability to pay.  As the bankruptcy court observed, Mosley made inquiries about resolving his student loan obligations with the United States Department of Education, the Georgia Student Finance Commission, the Veterans' Administration, and his congressman.  His failure to enroll in the Income Contingent Repayment Program or to pursue other non-bankruptcy options with Educational Credit does not detract from the good faith he has demonstrated in these inquiries and in his attempts to obtain work.  We also reject Educational Credit's argument that Mosley exhibited bad faith by failing to cooperate with discovery in this case.  The court found that Mosley used his best efforts to answer Educational Credit's interrogatories and file medical documentation with the court; that documentation was excluded because Mosley did not know how to authenticate it, not because he was uncooperative in discovery.  We affirm the bankruptcy court's conclusion that Mosley has made good faith efforts to repay his student loans and would suffer undue hardship if they were excepted from discharge.

14

Finally, we review the district court's order denying Educational Credit's motion to strike the supplemental order issued by the bankruptcy court after the notice of appeal was filed. The district court concluded that the bankruptcy court lacked jurisdiction to enter the supplemental order but denied Educational Credit's motion to strike because the supplemental order did not alter, but only elaborated on, the findings of fact and conclusions of law the bankruptcy court had announced orally. Educational Credit reiterates its argument that the bankruptcy court lacked jurisdiction to enter the supplemental order once Educational Credit had filed its notice of appeal, citing In re Combined Metals Reduction Co., 557 F.2d 179, 200 (9th Cir. 1977) (stating the "general rule . . . that once a notice of appeal has been filed, the lower court loses jurisdiction over the subject matter of the appeal" and holding that lower courts lacked jurisdiction to vacate or modify an order under appeal).

The filing of a notice of appeal generally "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982). An exception to this rule exists, however, where the lower court acts in aid of appellate review, and a lower court has jurisdiction to reduce its oral findings to writing even if a party has filed a notice of appeal in the interim. See Silberkraus v. The Seeley Co. (In re Silberkraus), 336 F.3d 864, 869 (9th Cir.

15

2003) (stating that "the bankruptcy court retained jurisdiction to publish its written findings of fact and conclusions of law because they were consistent with the court's oral findings and because they aid us in our review of the court's decision"). The bankruptcy court's supplemental order aided the district court's review and aids ours in this case by explaining its findings with complete citations to the governing cases. Educational Credit asserts that the order bolstered an otherwise inadequate record, but it does not point us to any specific instances of embellishment. Our review of the supplemental order and the court's oral findings reveals that they are consistent; moreover, in the order granting the discharge, the bankruptcy court stated that it reserved the right to enter supplemental findings. The supplemental order did not vacate or modify the order on appeal, and the bankruptcy court had jurisdiction to issue it in this instance.

We AFFIRM both the bankruptcy court's order discharging Mosley's student loans and the district court's denial of the motion to strike the supplemental order.