**In re Keith John PICHT and Tamara Jean Picht, Debtors.**

**Bank of the Prairie, Appellant,**

**v.**

**Keith John Picht, Tamara Jean Picht and William Griffin, Trustee, Appellees.**

**BAP No. KS–08–076.**

**Bankruptcy No. 08–20677.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 14, 2009.

Jonathan C. Becker, Lawrence, Kansas, for Appellant.

Andrew D. Hennier of Lentz & Clark, P.A., Overland Park, Kansas, for Appellees Keith John Picht and Tamara Jean Picht.

Before MICHAEL, BROWN, and STARZYNSKI[1], Bankruptcy Judges.

## OPINION

MICHAEL, Bankruptcy Judge.

While complex legal and factual issues are often present in litigation, the procedure used to resolve those issues is relatively straightforward. A trial court conducts a trial at which it receives evidence and hears argument. Said court then issues its findings of fact, conclusions of law, and judgment. After reviewing the same, one or more of the parties may appeal the trial court's ruling. All of this is rather pedestrian for those who make their living in the world of litigation.

The present appeal requires us to answer a question raised by neither of the parties: may a bankruptcy court issue a ruling without explanation, and inform the parties that it will explain the legal and factual basis for its decision if, and only if, one of the parties appeals that decision? We hold that bankruptcy courts are bound, both by federal rule and by general principles of jurisprudence, to explain the legal and factual basis for their decisions in each and every contested matter, and may not condition this obligation upon the filing of a notice of appeal. We also conclude that, absent extraordinary circumstances, once a decision has been appealed, a bankruptcy court loses jurisdiction to enter its findings of fact and conclusions of law. Accordingly, we reverse the decision of the bankruptcy court, and remand so that the bankruptcy court may legally enter its findings of fact and conclusions of law.

## I. BACKGROUND

In April 2004, Bank of the Prairie (the "Bank") made a loan to Keith John Picht and Tamara Jean Picht (the "Pichts") to finance a sports bar and grill owned by a corporate entity known as TK's Sports Grill (the "Grill"). The loan was personally guaranteed by the Pichts, and secured by, among other things, a second mortgage on their residence (the "Homestead").[2] The Grill failed, and on October 6, 2005, the Pichts filed for Chapter 7 relief. The Pichts were granted a discharge on January 31, 2006.

Following the Chapter 7 discharge, the parties agreed to sell the Grill's personal property and remit the sale proceeds to the Bank. After the sale, the Bank was owed an additional $126,000, with only the Bank's second mortgage lien on the Homestead remaining as collateral. On March 26, 2008, the Bank foreclosed its lien in state court and obtained an *in rem* judgment on the Homestead.

---

1. Honorable James S. Starzynski, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Mexico, sitting by designation.

2. Appellee's Br. at 2.

Two days later, the Pichts filed for Chapter 13 relief. They proposed a Chapter 13 plan that would pay the Bank the total sum of $14,852.73, plus interest, and required the Bank to release its lien upon the Homestead after payment of these sums.[3] The Bank objected to the plan. A hearing on the Bank's objection was held on May 20, 2008. At the hearing, the bankruptcy court heard argument from both parties, directed the parties to file post-argument briefs, and continued the hearing to August 19, 2008. Both parties filed briefs in a timely fashion.

On August 19, 2008, the bankruptcy court again heard argument, and confirmed the plan over the Bank's objection.[4] The bankruptcy court's oral confirmation of the plan included no specific findings of fact or conclusions of law.[5] At the end of the hearing, the bankruptcy court stated that "[i]n the event there is an appeal, the Court reserves the right to file a memorandum decision."[6] On August 21, 2008, the bankruptcy court entered an order confirming the Pichts' proposed Chapter 13 plan.[7]

On August 25, 2008, the Bank appealed the bankruptcy court's confirmation order. Over one month after the Bank filed its notice of appeal, and three weeks after the Bank filed its "Designation of Issues for Appeal," the bankruptcy court entered its "Memorandum Opinion Supplementing Order Confirming Debtors' Chapter 13 Plan" ("Supplemental Opinion").[8] Neither party has objected to, or moved to strike, the bankruptcy court's Supplemental Opinion.

At oral argument on this matter, we inquired of counsel regarding the timing of the Supplemental Opinion, and expressed our concern with the practice of conditioning the issuance of findings of fact and conclusions of law upon the filing of an appeal. In response to questioning, counsel for the Bank stated that he was bothered by the bankruptcy court's refusal to make findings and conclusions when the decision was rendered, and found the Supplemental Opinion to be "a sort of slap" at him in response to the filing of the appeal. Counsel for the Bank also stated that the failure of the bankruptcy court to issue findings and conclusions at the time of its decision placed the Bank in the difficult position of appealing the order of confirmation without an understanding of the legal or factual basis behind it, as the rules require a notice of appeal to be filed within ten days of the bankruptcy court's decision.[9] Counsel for the Pichts stated that, while he appreciated the procedural concerns of this Court, he did not wish to incur further delays and expense, and that the Pichts were ready for resolution of the appeal on its merits.

## II. JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district

---

**3.** *Chapter 13 Plan, in* Appellant's App. at 12–13. The secured claim of $14,852.73 represents the value of the Homestead, $300,000, less the amount of the first mortgage held by Wells Fargo, $285,147.27.

**4.** *Docket No. 47, in* Appellant's App. at 7.

**5.** *Tr. of Proceedings held August 19, 2008,* at 12, *in* Appellant's App. at 82.

**6.** *Id.*

**7.** *Order Confirming Chapter 13 Plan, in* Appellant's App. at 46.

**8.** *See Docket Nos. 50, 59 & 61, in* Appellant's App. at 8–9.

**9.** *See* Fed. R. Bankr.P. 8002(a).

court hear the appeal.[10] Neither party elected to have this appeal heard by the United States District Court for the District of Kansas. The parties have thus consented to appellate review by this Court. A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' "[11] Here, the bankruptcy court's order confirming the Pichts' Chapter 13 plan is a final decision for purposes of review.[12]

## III. DISCUSSION

As stated by the United States Supreme Court, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[13] This same principle applies in the context of a bankruptcy court's order appealed to a bankruptcy appellate panel. In its Supplemental Opinion, the bankruptcy court addressed its jurisdiction to enter the Supplemental Opinion, stating:

> The order confirming the Debtors' Chapter 13 plan is currently on appeal to the United States Bankruptcy Appellate Panel of the Tenth Circuit. Although the appeal of an issue typically deprives this court of jurisdiction over the matter on appeal, this Court may

enter orders "pertaining to the appeal record in aid of the appeal process."[14]

In support of its actions, the bankruptcy court cited In re Carlson ("Carlson"), a decision of the bankruptcy court for the Northern District of Illinois.[15] While Carlson illustrates that there is a limited exception to the general rule that a trial court loses jurisdiction to act once a notice of appeal has been filed, it does not support the bankruptcy court's actions in this case.

Carlson involved an adversary proceeding with respect to the dischargeability of a state court judgment. In the adversary proceeding, the bankruptcy court granted summary judgment in favor of the creditor, and the debtor appealed to the district court. The district court affirmed the bankruptcy court's summary judgment, and the debtor appealed to the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"). The record on appeal compiled by the bankruptcy court was inexplicably lost, and not transmitted to the Seventh Circuit. The debtor filed a motion to supplement the record on appeal with the Seventh Circuit, so as to restore the original record, as well as to add additional materials.[16] In response, the Seventh Circuit issued an order denying the motion "without prejudice to renewal in the bankruptcy court in the first instance."[17]

---

10. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

11. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

12. Interwest Bus. Equip. Inc. v. U.S. Trustee (In re Interwest Bus. Equip., Inc.), 23 F.3d 311, 315 (10th Cir.1994).

13. Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982).

14. Supplemental Opinion at 1, in Appellant's App. at 52 (quoting In re Carlson, 255 B.R. 22, 23 (Bankr.N.D.Ill.2000)).

15. 255 B.R. 22 (Bankr.N.D.Ill.2000).

16. Id. at 23.

17. Id.

The *Carlson* debtor then filed a motion to supplement the record on appeal with the bankruptcy court. The bankruptcy court entertained the motion, and issued a memorandum opinion explaining its decision to grant the motion in part, and deny it in part. In its memorandum opinion, the bankruptcy court stated it was clear from the Seventh Circuit's order that the motion to supplement was to be addressed by the bankruptcy court. Having in essence been granted permission by the Seventh Circuit to rule on the motion, the bankruptcy court ordered the bankruptcy court clerk to reassemble the original record on appeal, and denied the debtor's request to enlarge the same. The circumstances under which the bankruptcy court exercised jurisdiction in *Carlson* and the bankruptcy court's exercise of jurisdiction in the present case could not be more dissimilar. Nothing in *Carlson* suggests that a bankruptcy court may render a decision without explanation and reserve the right to explain itself only in the event of an appeal.

■ The bankruptcy court's interpretation of the statement in *Carlson* that a bankruptcy court has "jurisdiction to enter orders pertaining to the appeal record in aid of the appeal process" as allowing the issuance of a memorandum opinion post-appeal is incorrect. Courts have recognized a trial court's jurisdiction to act following the filing of a notice of appeal only in limited circumstances, such as when granted permission to do so by the appellate court,[18] when authorized to act by a procedural rule,[19] or when adjudicating a dispute between the parties regarding what documents properly constitute the record on appeal.[20] In this case, the bankruptcy court's issuance of the Supplemental Opinion does not fall within those limited circumstances. The bankruptcy court's attempt to so considerably expand the exception to the general rule that a trial court loses jurisdiction once an appeal is filed cannot be permitted.[21]

■ Equally troubling is the bankruptcy court's disregard of its mandate under Federal Rule of Civil Procedure 52 ("Rule 52"). Rule 52 provides in pertinent part:

(a) **Findings and Conclusions.**

(1) *In General.* In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a

---

18. *See id.*

19. *See Int'l Ass'n of Machinists & Aerospace Workers v. E. Air Lines, Inc.,* 847 F.2d 1014 (2d Cir.1988)(pending appeal a trial court may enter an injunction that maintains the status quo pursuant to Federal Rule of Civil Procedure 62(c)).

20. *See Metro N. State Bank v. Barrick Group (In re Barrick Group),* 100 B.R. 152, 154 (Bankr.D.Conn.1989).

21. We are aware of other cases that address a trial court's jurisdiction after a notice of appeal is filed. *See, e.g., Walden v. Walker (In re Walker),* 515 F.3d 1204 (11th Cir.2008); *Educ. Credit Mgmt. v. Mosley (In re Mosley),* 494 F.3d 1320 (11th Cir.2007); *In re Silber-*

*kraus,* 336 F.3d 864 (9th Cir.2003); *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446 (Fed.Cir. 1988); and *In re Thorp,* 655 F.2d 997 (9th Cir.1981). Without opining as to whether they were correctly decided, we note that these cases involved situations where a trial court issued findings of fact and conclusions of law from the bench in the course of ruling on an expedited matter (such as a preliminary injunction), and reserved the right to supplement the oral findings at a later date. None of these cases involved a trial court that made no findings of fact and conclusions of law with its decision, and conditioned making such findings and conclusions upon the filing of an appeal.

memorandum of decision filed by the court.[22]

The United States Court of Appeals for the Tenth Circuit expressed the rationale underlying Rule 52 as follows:

> The purposes of this rule are to aid the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court, to make definite what is decided in order to apply the doctrines of estoppel and res judicata to future cases, and to evoke care on the part of the trial judge in considering and adjudicating the facts in dispute.[23]

The requirements of Rule 52 apply equally to findings of fact and conclusions of law. Even when, as here, a case is presented on the basis of undisputed facts, conclusions of law are necessary:

> Rule 52(a) also obligates the district court to "state separately" its conclusions of law. We do not minimize the district court's task of detailing its conclusions of law. Courts of appeal subject a district court's conclusions of law to a de novo review—we are not constrained by the deferential standard of reviewing only for clear error. Despite this distinction, the duty of the district court to "state separately its conclusions of law thereon" becomes particularly important when the case, like this one, involves complex legal issues. For when the district court carefully enunciates

and explains its resolution of questions of law, we know that it has thoughtfully and diligently decided the legal issues. Moreover, the preparation of sufficiently complete conclusions of law augments our comprehension of the legal issues on appeal. We must understand not only the factual, but also the legal reasoning of the district court to enable us to conduct a "just, orderly review of the rights of the parties before us." [24]

When Rule 52 is applicable, its requirement of making findings of fact and conclusions of law is universal. Nothing in Rule 52 can be construed to make judicial compliance with its requirements contingent upon an appeal of the trial court's ruling. Allowing such a procedure would circumvent the judicial process and create suspicion on several levels.

██ One of the purposes of findings of fact and conclusions of law is to afford a party an understanding of the basis for the trial court's decision before it decides whether to undertake the time and expense of an appeal.[25] Many a well-written decision has quelled an appeal. Additionally, if findings of fact and conclusions of law are made subsequent to a party's appeal, especially after designation of the issues on appeal, a reasonable person would be justified in believing that they were tailored to rebut the issues raised on appeal. Rule 52 requires a trial court to issue findings and conclusions in tandem

---

22. Fed.R.Civ.P. 52(a)(1). This rule is made applicable in bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7052. Federal Rule of Bankruptcy Procedure 9014(c) makes Rule 7052 applicable in contested matters, and Federal Rule of Bankruptcy Procedure 3015(f) provides that an objection to plan confirmation is governed by Rule 9014.

23. *Featherstone v. Barash*, 345 F.2d 246, 249 (10th Cir.1965).

24. *Chandler v. City of Dallas*, 958 F.2d 85, 89 (5th Cir.1992) (quoting *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir.1991)).

25. Another benefit of issuing findings of fact and conclusions of law is that it allows nonparties to the litigation that face similar issues to learn of the judge's interpretation of the law. Such knowledge often allows non-parties to avoid litigating an issue previously considered by the court.

with its ruling or decision, not following a party's appeal of that decision. The disclosure of how and why a bankruptcy court rules a certain way is essential to our justice system.

This Court is aware that reversing and remanding this case will create additional expense and delay for the parties. In all likelihood, upon remand, the bankruptcy court will issue the same memorandum opinion, and the parties will be forced to start the appeal process over again. However, we must balance these costs with the harm that would result from endorsing what the bankruptcy court has done here. Proceeding with the merits of this case would be tantamount to telling every bankruptcy court that it is acceptable to issue findings of fact and conclusions of law if, and only if, its decision is appealed. We cannot and will not so act.

## V. CONCLUSION

Under the rules that govern our judicial system, the decision making process of our judges must be transparent. Judges are obliged to explain the legal and factual bases for their decisions.[26] Parties and the public should not be left to speculate as to why a judge ruled the way she or he ruled. The timing of a judicial decision is an important element of judicial transparency. Parties should not have to force a trial court to explain the basis for its decision, or wait for that explanation until after appellate review is sought. Here, the bankruptcy court erred by failing to issue findings of fact and conclusions of law in a timely manner, and by conditioning the issuance of such findings upon the filing of a notice of appeal. As a result, we

*sua sponte* strike the bankruptcy court's Supplemental Opinion from the record, reverse the confirmation order, and remand this case to the bankruptcy court so that it may properly enter its findings of fact and conclusions of law.

---

**26.** Indeed, one scholar has suggested that there are at least three "values and attributes we expect of all of our judges: transparent reasoning, fearless independence, and unremitting courage." Professor Ian Chubb AC, Vice–Chancellor, The Austral. Nat'l Univ., Comments made at the conferring of an honorary degree upon Michael Donald Kirby, Justice of the High Court of Australia (Dec. 17, 2004), http://www.anu.edu.au/cabs/hdc/KIRBYCitation.pdf.