In re Keith John PICHT and Tamara Jean Picht, Debtors.

Bank of the Prairie, Appellant,

v.

Keith John Picht, Tamara Jean Picht, and William H. Griffin, Trustee, Appellees.

BAP No. KS–09–037.
Bankruptcy No. 08–20677.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

May 4, 2010.

See also 403 B.R. 707.

Submitted on the briefs: *

Jonathan C. Becker, Lawrence, Kansas, for Appellant.

Carl R. Clark and Andrew D. Hennier of Lentz Clark & Deines PA, Overland Park, Kansas, for Appellees Keith John Picht and Tamara Jean Picht.

Before THURMAN, RASURE, and ROMERO, Bankruptcy Judges.

RASURE, Bankruptcy Judge.

Appellant Bank of the Prairie (the "Bank") appeals the order confirming the Chapter 13 plan proposed by the Appellees/Debtors Keith and Tamara Picht (the "Pichts") and overruling the Bank's objection that (1) the plan modified the Bank's secured claim in violation of 11 U.S.C. § 1322(b)(2),[1] and (2) the plan required the Bank to release its lien in violation of § 1325(a)(5)(B)(i). We REVERSE and REMAND for further proceedings consistent with this Opinion.

## I. BACKGROUND

The facts relevant to this appeal are undisputed. In 2002, the Bank extended credit to a small business entity owned by the Pichts. The business entity granted the Bank a security interest in certain personal property. The Pichts personally guaranteed the loan and granted the Bank a second mortgage on their principal residence. The business defaulted on the loan, and the Pichts defaulted on their guarantee.

On October 6, 2005, the Pichts filed for relief under Chapter 7 of the Bankruptcy Code and thereafter obtained a Chapter 7 discharge. Although the Pichts' personal liability on the guarantee was discharged, the debt to the Bank remained secured by the lien on the business personal property and the Pichts' residence.[2] Thereafter, the business personal property was liquidated, and the proceeds were applied to the loan, reducing the balance of the loan to approximately $127,000. The Bank foreclosed its mortgage on the residence and obtained an *in rem* judgment against the residence in the amount of $127,000.

Two days later, on March 28, 2008, the Pichts filed for relief under Chapter 13 of the Bankruptcy Code (the "Petition Date"). On the Petition Date, the Pichts' residence was encumbered by a first mortgage to another financial institution in the amount of approximately $285,000 and by the Bank's *in rem* judgment in the approximate amount of $127,000. The Pichts val-

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Unless otherwise indicated, all statutory references herein are to sections of the Bank-

ruptcy Code, Title 11 of the United States Code.

2. *See Dewsnup v. Timm*, 502 U.S. 410, 418–19, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (liens on a debtor's property are unaffected by a Chapter 7 discharge).

ued the residence at $300,000. In their Chapter 13 plan, the Pichts proposed to pay the Bank a total of approximately $15,000 (i.e., the value of the residence less the first mortgage), plus interest, over sixty months. The plan further provided that "[u]pon payment of the allowed secured claim of [the Bank], . . . [the Bank] shall immediately file a satisfaction of its mortgage. . . ."[3]

The Bank objected to confirmation of the Chapter 13 plan on procedural[4] and substantive grounds. Substantively, the Bank argued that the plan was not confirmable because § 1322(b)(2) prohibits a Chapter 13 debtor from modifying the rights of a secured creditor whose claim is "secured only by a security interest in real property that is the debtor's principal residence" (the "anti-modification provision").[5] On the Petition Date, the debt to the Bank was in fact secured only by the Pichts' residence because all other collateral had been liquidated prepetition. Thus, the Bank contended that the clause in the plan that ordered the Bank to release its lien after receiving payment of only approximately $15,000 modified its rights in violation of § 1322(b)(2).

The Pichts argued, and the bankruptcy court held, that the anti-modification provision of § 1322(b)(2) could not be invoked by the Bank. The bankruptcy court found it irrelevant that on the Petition Date, the Bank was secured only by the residence. Rather, the court concluded that the character of the property pledged to secure the debt in the original loan agreements governed whether the Bank was entitled to the protection of the anti-modification provision of § 1322(b)(2).[6] Because the debt was originally secured by business personal property in addition to the residence, the Bank's § 1322(b)(2) objection to the plan was overruled.[7]

The Bank also asserted an objection to confirmation of the Chapter 13 plan under § 1325(a)(5)(B)(i)(I)(aa). This section provides that the court shall confirm a plan if, with respect to "each allowed secured claim provided for by the plan, . . . the plan provides that . . . the holder of such claim retain the lien securing such claim until the earlier of (aa) the payment of the underlying debt determined under nonbankruptcy law; or (bb) discharge under section 1328 . . ." (the "lien retention provision").[8] Because the Pichts were not eligible for a discharge under § 1328 due to the timing of their previous Chapter 7 case,[9] the Bank argued that the plan had to provide that the Bank would retain its lien until "the payment of the underlying debt determined by nonbankruptcy law," and under nonbankruptcy law, the Bank would not be required to release its lien until its *in rem* judgment of $127,000 was satisfied.

---

3. *Chapter 13 Plan* at 2, 3, ¶ 9, *in* Appellant's Second Amended Appendix ("App.") at 2–3.

4. The Bank objected to the court adjudicating the extent of its lien in the confirmation process rather than through an adversary proceeding, citing Rule 7001(2) of the Federal Rules of Bankruptcy Procedure.

5. 11 U.S.C. § 1322(b)(2).

6. *Memorandum Opinion on Remand Confirming Debtors' Chapter 13 Plan ("Memorandum Opinion")* at 3–4, *in* App. at 9–10.

7. *Id.* at 10.

8. 11 U.S.C. § 1325(a)(5)(B)(i)(I).

9. *See* 11 U.S.C. § 1328(f)(1) (a debtor is not eligible for a Chapter 13 discharge if the debtor received a Chapter 7 discharge in a case filed during the four year period immediately preceding the date of the order for relief in the Chapter 13 case).

The bankruptcy court held that the value of the Bank's lien was limited to the value of the residence less the amount of the first mortgage (*i.e.*, its "allowed secured claim" calculated under § 506(a)(1)), and that after the Pichts made plan payments to the Bank in an amount equal to the amount of the Bank's allowed secured claim, the Bank would be ordered to release its lien. The court reasoned that because the Pichts' personal liability had been previously discharged, "any liability above the allowed secured claim does not exist" against the residence and thus the full payment of the allowed secured claim satisfied the *in rem* claim under nonbankruptcy law.[10] Further, the bankruptcy court found that the Bank would have obtained a similar result if its state law foreclosure action had not been interrupted by the Chapter 13 bankruptcy, and thus the Bank was receiving as much as it would have received if it had proceeded under nonbankruptcy law.[11] Accordingly, the bankruptcy court overruled the Bank's § 1325(a)(5) objection and confirmed the Pichts' plan.

The Bank appeals the confirmation order.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals[12] from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[13] Neither party elected to have this appeal heard by the United States District Court for the District of Kansas. The parties have therefore consented to appellate review by this Court.

■ A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[14] An order confirming a Chapter 13 plan is a final appealable order.[15]

## III. STANDARD OF REVIEW

■ The facts are undisputed. The Bank appeals the bankruptcy court's interpretation of two provisions of the Bankruptcy Code and one Bankruptcy Rule, and the court's application of those provi-

---

**10.** *Memorandum Opinion* at 7, *in* App. at 13.

**11.** *Id.* at 8, *in* App. at 14.

**12.** The bankruptcy court entered its first confirmation order on August 19, 2008. The Bank filed its notice of appeal on August 26, 2008 (the "First Appeal"). In the First Appeal, BAP Case No. KS–08–076, a panel of this Court remanded the matter to the bankruptcy court to make findings of fact and conclusions of law. *In re Picht*, 403 B.R. 707 (10th Cir.BAP2009). On June 20, 2009, the bankruptcy court issued its *Memorandum Opinion*, and on June 23, 2009, it entered an Order Confirming Chapter 13 Plan. *Order Confirming Chapter 13 Plan*, in App. at 17–19. The Bank filed its notice of appeal *of* that order on July 2, 2009. Because a motion for partial reconsideration was pending in the bankruptcy court, however, the notice was premature. On August 31, 2009, the motion

for reconsideration was resolved by the entry of an agreed order, and on September 1, 2009, the Bank advised the BAP of such resolution. *See* Fed. R. Bankr.P. 8002(b) (notice of appeal is ineffective until disposition of postjudgment motion). Thus, the Bank's premature notice of appeal became effective on August 31, 2009, and was timely.

**13.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–1.

**14.** *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

**15.** *See United Student Aid Funds, Inc. v. Espinosa*, No. 08–1134, 2010 WL 1027825 at *6 (Mar. 23, 2010).

sions to the stipulated facts. These issues of law are subject to *de novo* review.[16]

## IV. DISCUSSION

We conclude that because the Pichts' Chapter 13 plan does not comply with § 1325(a)(5), the bankruptcy court erred in confirming the plan. Section 1325(a) sets forth a lengthy list of conditions that must be established by a debtor in order to obtain confirmation of a Chapter 13 plan. One of those conditions is that the plan must address claims of secured creditors on terms consistent with § 1325(a)(5). Under § 1325(a)(5), a plan cannot be confirmed unless "with respect to each allowed secured claim provided for by the plan," one of the three situations applies.

First, if the secured creditor accepts its treatment in the plan, § 1325(a)(5) is satisfied.[17] In this case, the Bank has specifically objected to the lien release provision contained in the Pichts' plan.

Second, a plan will satisfy § 1325(a)(5) if it provides that the debtor will surrender the collateral to the secured creditor.[18] Here, the Pichts propose to retain the residence.

Third, and finally, and under the only provision available to the Pichts, a plan may be confirmed, even over the objection of the secured creditor, if the plan meets the three-part test of § 1325(a)(5)(B). Section 1325(a)(5)(B) provides that a plan may be confirmed if—

> (5) with respect to each allowed secured claim provided for by the plan—
>
> . . .
>
> (B)(i) the plan provides that—

> (I) the holder of such claim retain the lien securing such claim until the earlier of—
>
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>
> (bb) discharge under section 1328; and
>
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
> (iii) if—
>
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan[.][19]

■ A debtor relying on § 1325(a)(5)(B) must propose a plan that satisfies subsections (i), (ii) and (iii). We conclude that the Pichts' plan violates the lien retention provision of § 1325(a)(5)(B)(i).

---

**16.** *See Garrett v. Fleming,* 362 F.3d 692, 695 (10th Cir.2004); *State Bank of S. Utah v. Gledhill (In re Gledhill),* 76 F.3d 1070, 1077 (10th Cir.1996).

**17.** *See* 11 U.S.C. § 1325(a)(5)(A) ("the holder of such claim has accepted the plan").

**18.** *See* 11 U.S.C. § 1325(a)(5)(C).

**19.** 11 U.S.C. § 1325(a)(5)(B).

Initially, we note that because the Pichts are not entitled to a discharge upon the completion of their Chapter 13 plan,[20] subsection (bb) of § 1325(a)(5)(B)(i)(I), which requires a plan to provide that a secured creditor retain its lien until discharge under § 1328, is inapplicable. Thus, the Pichts' only remaining option is to propose a plan that complies with subsection (aa), i.e., a plan providing that "the holder of such claim retain the lien securing such claim until ... the payment of the underlying debt determined under nonbankruptcy law[.]"[21]

Two days before the Pichts filed for relief under Chapter 13, the state court entered an *in rem* judgment in favor of the Bank and against the residence in the amount of $127,000. The judgment established the amount of "the underlying debt [against the Picht's property] determined under nonbankruptcy law." The Pichts' plan requires the Bank to release its lien upon receipt of approximately $15,000, which is less than the amount the Bank is entitled to recover from the residence under nonbankruptcy law.

The bankruptcy court held that the "underlying debt determined under nonbankruptcy law" was equal to the amount of the "allowed secured claim" calculated under § 506(a).[22] The court stated—

> The *in rem* claim only exists to the extent that there is value in the debtor's property in which the creditor holds a lien to secure the claim under § 506(a). It is this unique species of *in rem* claim with which the Debtors must deal in the current bankruptcy case. As to these Debtors, any liability above the allowed secured claim does not exist, so all that remains for these Debtors is to pay the allowed secured claim, in other words, the *in rem* claim the Bank holds against the Debtors and the Estate. In this sense, the underlying debt, which can only constitute the *in rem* claim under nonbankruptcy law, is satisfied upon

---

**20.** *See* 11 U.S.C. § 1328(f)(1) ("[T]he court shall not grant a discharge of all debts provided for in the plan ... if the debtor has received a discharge ... in a case filed under chapter 7 ... of this title during the 4–year period preceding the date of the order for relief under this chapter[.]").

**21.** 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa). The bankruptcy court concluded that the Pichts had a third option—to provide that the Bank retain its lien until completion of their plan. The bankruptcy court reasoned that because the next subsection, § 1325(a)(5)(B)(i)(II), states " 'if the case ... is dismissed or converted without *completion of the plan,* such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law[,]' ... [that subsection] contemplates completion of the plan by the debtor as a trigger to satisfaction of a creditor's lien; discharge is obviously not the only mechanism." *See Memorandum Opinion* at 7, *in* App. at 13.

We do not read § 1325(a)(5)(B)(i)(II) as supplementing, by negative implication, the two conditions (discharge or full payment) under which a plan may require a creditor to release its lien. That subsection merely requires the plan to expressly provide that a lien will be retained to the full extent allowed under nonbankruptcy law upon dismissal or conversion if the plan is not completed. In the unlikely event that dismissal or conversion occurs after completion of the plan, then subsection (II) does not apply, but subsection (I) still does. If no Chapter 13 discharge is entered, the lien is retained until payment of the debt under nonbankruptcy law.

**22.** Section 506(a) provides, in pertinent part: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." 11 U.S.C. § 506(a).

payment of the allowed secured claim.[23] The bankruptcy court determined that the value of the Bank's "allowed secured claim" under § 506(a) was the value of the residence less the balance due on the first mortgage.[24] Assuming, without deciding, that the anti-modification provision of § 1322(b)(2) is inapplicable, a plan proposing to pay approximately $15,000, plus interest, toward the Bank's debt during the life of the plan, rather than the entire $127,000 judgment, is not in itself objectionable because it is consistent with § 1325(a)(5)(B)(ii)—*i.e.,* "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]"[25] But the bankruptcy court erred in holding that payment of the "allowed secured claim"—the amount of the *claim* determined under *bankruptcy law*—satisfied the requirement that the Bank retain its lien until payment of the *underlying debt* determined under *nonbankruptcy* law. The payment of the Bank's "allowed secured claim" over the life of the plan met only one requirement of § 1325(a)(5)(B); another separate requirement mandated that the Bank be allowed to retain its lien until certain events occurred.

■ In its analysis, the bankruptcy court erroneously concluded that "any liability above the allowed secured claim does not exist."[26] Clearly, the Pichts' personal liability for the debt was discharged in their Chapter 7 case,[27] but, as evidenced by the post-discharge *in rem* judgment, the underlying debt itself had not been extinguished. The United States Supreme Court has repeatedly held that liens pass through Chapter 7 bankruptcy unaffected, and the debt secured by the lien continues to exist and is enforceable against property securing the debt (unless, of course, the

**23.** *Memorandum Opinion* at 7–8, *in* App. at 13–14.

**24.** The Tenth Circuit Court of Appeals cast doubt on whether the term "allowed secured claim" in § 1325(a)(5)(B) refers to an "allowed secured claim" calculated under § 506(a), positing that, at least in the context of a so-called "910 vehicle" claim, it may mean a claim that is "allowed" (i.e., not disallowed under § 502) and "secured" by a lien (but not bifurcated under § 506(a), because pursuant to the "hanging paragraph" of § 1325(a), a claim secured by a 910 vehicle cannot be bifurcated). *See In re Ballard,* 526 F.3d 634, 641 (10th Cir.2008).

In the *Ballard* case, the debtor chose to satisfy § 1325(a)(5) by surrendering the vehicle to the secured creditor under § 1325(a)(5)(C). The debtor contended that the debt should be deemed completely satisfied upon surrender. The Tenth Circuit determined that nothing in the Bankruptcy Code vitiated a secured creditor's right under non-bankruptcy law to assert an unsecured deficiency claim after the surrender and sale of a 910 vehicle. The surrender of collateral is one of the three methods allowed by

§ 1325(a)(5) for treating secured creditors in a plan; however, the surrender provision, § 1325(a)(5)(C), does not expressly extinguish the debt or limit the creditor's right to assert a deficiency claim upon surrender.

Although the Bank in this case objected to the modification of its claim under § 1322(b)(2), it did not object on the ground that the "allowed secured claim" payable through the plan under § 1325(a)(5)(B)(ii) and (iii) is something other than a § 506(a) "allowed secured claim." Accordingly, we decline to address in this case whether Ballard's analysis of the term "allowed unsecured claim" is applicable to cases outside the 910 vehicle context.

**25.** 11 U.S.C. § 1325(a)(5)(B)(ii).

**26.** *Memorandum Opinion* at 7, *in* App. at 13.

**27.** *See* 11 U.S.C. § 524(a)(2) (A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a *personal liability* of the debtor") (emphasis added).

lien is avoided).[28] Thus, in a Chapter 7 case, a lien survives the discharge, and its value is not in any way limited or "stripped" by the discharge.[29] Rather, the value of the surviving lien may fluctuate with the value of the collateral and the value of prior liens, just as it would if the Chapter 7 case had not been filed.

The bankruptcy court relied on *Johnson v. Home State Bank*[30] in support of its analysis. In *Johnson*, the United States Supreme Court held that a lien on property of the debtor that survives a Chapter 7 discharge is a "claim" that may be scheduled and paid in a subsequent Chapter 13 plan.[31] The Supreme Court did not determine when or if a secured creditor could be ordered to release its lien, however. Notably, *Johnson* was decided prior to the substantial amendments made to the Bankruptcy Code in 2005.[32] Since 2005, § 1325(a)(5)(B)(i) requires a Chapter 13 plan to specifically address the issue of the duration of a creditor's lien. Thus, the *Johnson* case does not provide any guidance on the central issue in this case.[33]

**28.** *See Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

**29.** *Dewsnup,* 502 U.S. at 417, 112 S.Ct. 773.

**30.** 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

**31.** *Id.* at 83, 111 S.Ct. 2150.

**32.** The current lien retention provision contained in § 1325(a)(5)(B) was adopted in 2005 with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Prior to BAPCPA, § 1325(a)(5)(B) required a plan to provide that a secured creditor would "retain the lien securing such claim," but the statute did not determine at what point a secured creditor could be required to release its lien. Since the secured claims of most creditors of a Chapter 13 debtor could be modified by reducing interest rates, extending maturity, modifying payment amounts, and/or bifurcating a claim into allowed secured and unsecured claims under § 506(a), it was unclear whether a creditor could be required to release its lien after payment of the "allowed secured claim" (which could occur prior to the completion of the plan), or whether the creditor could retain its lien until the claim (secured and unsecured) was paid in full.

BAPCPA clarified the issue by deeming a plan unconfirmable unless an objecting secured creditor is assured that its lien continues to encumber the collateral until the Chapter 13 discharge, even if the judicially determined "allowed secured claim" is paid before discharge. The plan must allow the creditor to retain its lien until the full contract amount (including the part of the claim relegated to the "unsecured" category) is paid, or until discharge. In addition, the plan must now provide that if the case is dismissed or converted prior to completion of the plan, the creditor's lien remains on the collateral until full payment or extinguishment under nonbankruptcy law.

Section 1328(f) is another BAPCPA amendment. Prior to BAPCPA, a Chapter 13 debtor could obtain a discharge upon completion of the plan, regardless of whether the debtor recently received a Chapter 7 discharge. Now, under § 1328(f), a Chapter 13 debtor is absolutely precluded from receiving a discharge if the debtor obtained a Chapter 7 discharge in a case filed within four years of the Chapter 13 case. It appears that Congress was attempting to prevent the perceived abuse of the bankruptcy system arising from debtors seeking successive Chapter 7 and Chapter 13 discharges (colloquially known as Chapter 20 relief).

**33.** We note that there is no binding precedent interpreting § 1325(a)(5)(B)(i), and the parties chose not to seek permission to appeal this issue directly to the Tenth Circuit Court of Appeals, notwithstanding our certification of the appeal under 28 U.S.C. § 158(d)(2). A handful of bankruptcy courts have issued decisions concerning the application of the lien retention provision of § 1325(a)(5)(B)(i) when the debtor is not entitled to a discharge, and those decisions are generally consistent with the analysis herein (although they may be

Finally, the bankruptcy court concluded that the Bank would not have recovered anything more than its § 506(a) "allowed secured claim" if the Pichts had not filed bankruptcy, because—

> the Bank could have foreclosed its interest, but the Bank could only recover the home's value to the extent it exceeded the value of the first mortgage and other superior encumbrances, such as real estate taxes. Any deficiency is not collectible against Debtors personally. The Bank should not obtain a more favorable equitable result in bankruptcy than it would be able to obtain outside bankruptcy.[34]

The Bank did, in fact, foreclose its mortgage prepetition and obtained a judgment *in rem* against the residence in the amount of $127,000. If the Pichts had not filed bankruptcy, the Bank could have immediately executed on the judgment and conceivably recovered an amount that roughly coincided with the § 506(a) "allowed secured claim." However, had the Pichts not filed bankruptcy, the Bank could also have chosen to defer execution in the hope that the value of the residence would increase.[35] But the Pichts did file bankruptcy and proposed a five-year plan, which forced the Bank to involuntarily defer enforcement of its judgment against the residence. Absent the lien release, the Bank would be entitled under nonbankruptcy law to enforce its *in rem* judgment against whatever value exists in the residence after completion of the plan and closing of the case.

We conclude that the debt to the Bank remained enforceable against the Pichts' residence in an amount up to $127,000, notwithstanding the Pichts' Chapter 7 discharge. Although the Bank's § 506(a) "allowed secured claim" of approximately $15,000 may have been properly provided for in the plan (again assuming that § 1322(b)(2) is not applicable in this case), the plan improperly discharged or extinguished the portion of the Bank's lien that exceeded the value of the residence as of the date of confirmation, even though the Pichts are not entitled to the benefit of a Chapter 13 discharge. Under nonbankruptcy law, the Bank's lien would encumber the Pichts' residence regardless of whether the value of the residence exceeded the first mortgage at any point in time. Moreover, over the life of the plan, the value of the residence may increase, and the Pichts will be paying down the principal on their first mortgage, creating additional value to which the Bank is entitled under nonbankruptcy law.[36]

Accordingly, because the lien release provision of the plan violates the Bank's right to retain its lien under § 1325(a)(5)(B)(i)(I) until the debt to the

---

distinguishable in part because they address when a creditor secured by a 910 vehicle may be required to release its lien). *See In re Harrison,* 394 B.R. 879 (Bankr.N.D.Ill.2008); *In re Lilly,* 378 B.R. 232 (Bankr.C.D.Ill.2007); *In re Hopkins,* 371 B.R. 324 (Bankr.N.D.Ill. 2007); *In re Williams,* 367 B.R. 625 (Bankr. N.D.Ill.2007).

**34.** *Memorandum Opinion* at 8, in App. at 14.

**35.** *See, e.g.,* Kan. Stat. Ann. § 58–2314, which provides that a judgment creditor has five years to enforce its foreclosure judgment against real estate before it becomes dormant

and unenforceable, unless the judgment is extended or renewed before the five year period expires. The dormancy period is tolled during any period in which the enforcement of the judgment is stayed or prohibited.

**36.** *See, e.g., Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) ("[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain").

Bank is paid or the lien is otherwise extinguished under nonbankruptcy law, the plan should not have been confirmed.[37]

It is unnecessary to address the Bank's assertion that the scope of its lien could not be modified under § 1322(b)(2) on the ground that its claim was, as of the petition date, "secured only by a security interest in real property that is the debtor's principal residence[.]" Because the provision requiring the Bank to release its lien after payments totaling less than the full amount of its in rem judgment rendered the plan unconfirmable under § 1325(a)(5)(B)(i)(I)(aa), we need not decide whether the lien release provision might also have been objectionable under § 1322(b)(2) in this case.[38]

## V. CONCLUSION

For the reasons stated herein, the confirmation order is REVERSED and the matter is REMANDED to the bankruptcy court for further proceedings consistent with this Opinion.

---

**37.** The Pichts' plan also fails to provide that "if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law." 11 U.S.C. § 1325(a)(5)(B)(i)(II). On remand, any proposed plan must also comply with this provision.

**38.** In addition, because we determine that the plan cannot include the lien release, it is not necessary to address whether the Pichts' effort to strip the Bank's lien required the commencement of an adversary proceeding pursuant to Bankruptcy Rule 7001(2).